The testator further directed that his executors, for the use and benefit of his child or children, should lend into good hands on interest the money on hand, and take bonds for unsettled debts due to him, and also lend out as aforesaid all the rents received for houses and lands and negro hire, except so much as might be necessary for the support of his child or children, and to have the interest regularly paid and converted into principal once a year, and also immediately collect all unsafe and doubtful debts, and lend the monies collected on interest as aforesaid. The defendants, together with William Norwood, Esq., were left executors, but the defendants alone qualified and took into possession the personal estate, and also took the care and nurture of Anne, who was then an infant, and received the rents and profits of the real estate devised by testator to his child.
The bill further stated that at the time of making the will, and at the time of testator's death, he had no child but Anne, and that his wife, Susannah, was not at the time of making the will, nor at any time afterwards, enceinte of another child by the testator. That complainant, after the death of Jehu Whitted, intermarried with Susannah, the widow, who afterwards died intestate, and the complainant became her administrator.
The bill further stated that Anne died an infant, intestate, without issue of her body or having ever had any, and letters of administration on her estate were also granted to complainant, by virtue of which administrations complainant claimed to be entitled to all the personal estate bequeathed to Susannah and Anne, with the profits thereof, and the rents and profits of the land.
(617) The bill further stated that the defendants, for the purpose of emancipating said slaves, threatened to remove them to some state or country beyond the jurisdiction of the court, and prayed that they might be enjoined from removing the slaves, and that they might give security for their forthcoming at the order of the court, or otherwise that the slaves should be delivered to the sheriff for safekeeping; and also prayed the writ of subpoena. The defendants in their answer admitted the death of Jehu Whitted, and that he left a will containing the devises and bequests set forth in the bill; that they had qualified as executors to said will; they further admitted the intermarriage of complainant with Susannah, the widow, her subsequent *Page 341 
death as well as that of Anne, as charged in the bill, and that administration on both estates had been committed to complainant; that Susannah never had any child by the testator but Anne; that as executors they took possession of the personal estate of their testator, and were now and at all times ready to account. Further answering, they said that long since they had settled with complainant for Susannah's share of the estate, and annexed as part of their answer their general account of the estate of their testator, as also an account of so much of the estate as was given to Anne; an account of the rents of real estate and hire of negroes. The answer further stated that the defendant Levi Whitted was appointed by Orange County court guardian to Anne, and as such took into his hands or became responsible for her estate; and the account of the guardianship up to the court after Anne's death made part of the answer. The defendant admitted that the girl, Fanny, had been emancipated, as directed by the testator; and as to the slaves Duncan, James, Stephen, and Betty, defendants submitted whether the event had not occurred which, according to the testator's directions, had placed these negroes in the hands of the defendants, in trust, to use their best endeavors to have them emancipated. Defendants further insisted that the legal estate was in them, (618) and that neither the next of kin of Anne nor her administrator in their behalf had any right to claim them now, or under any circumstances which might hereafter occur. As to the negro Jack the answer submitted whether he did not under the will belong to the defendant, William Whitted.
As to the profits of Anne's estate, defendants submitted whether they did not belong to them, and go over with the estate according to the limitations of the will, and as Anne was dead without issue, they submitted whether the personal estate of Anne did not under the will belong to them, and as to Hetty it was insisted that she belonged to the defendant Levi.
The limitations over of the real and personal property to the testator's brothers, in the two first sentences of the eleventh clause of the will, are certainly valid if the disjunctive word or is to be construed as the copulative and. Many cases have established the propriety of so construing it in wills of this kind, otherwise the property would be carried over, if the first devisee died under the age of twenty-one, though he had left issue, when the intent of the devisor was that both events should happen, the dying under twenty-one and without issue, before the estate should go over. So that at the age of twenty-one it was intended that the daughter should have the power of *Page 342 
disposing of the estate absolutely, and of making what provision she pleased for her issue, if she should have any; but in the event of her dying before twenty-one that her issue should not be deprived of the inheritance. Therefore the limitations over are not upon an indefinite failure of issue, but upon such events as must happen, if ever, within the time prescribed by law. To the cases quoted may be added the following decisions in this State. Dickinson v. Jordan, 5 N.C. (619) 380; Lindsey v. Burfoot, ib., 494; Arrington v. Alston, 4 N.C. 727; s. c. 6 N.C. 321.
The construction of that part of this clause which disposes of the money on hand, debts due, money arising from the sale of property, and the interest of the testator's land in Tennessee, is attended with more difficulty, owing to the introduction of the words, "if no such child or children." Nor should I feel any insuperable obstacle to connect these expressions with all the contingencies so distinctly enumerated at the beginning of the clause, were it not for the provisions at the end. For the pronoun such, being a word of reference, would grammatically relate to the child or children, which had been previously described, viz., living at the testator's death or surviving him and dying without issue and under twenty-one years of age. But the supposition that the testator intended his brothers to have this property in the event of his daughter dying without issue under twenty-one is rendered inadmissible by his directing his brothers to pay his sisters one hundred and ten pounds each within two years after hid death; and on their failure to do so admitting his father and sisters to participate with his brothers equally in the property. Such a provision would be rational and perfectly consistent in the event of the testator's dying without any child, for then his brothers would become immediately entitled to the property; but to compel them to pay the money at that time or to give them and the others the property at that time, in case of failure, when his daughter might live for years afterwards, and it remained in uncertainty whether she would die under age and without issue, was a provision which could scarcely have entered into the mind of any man. The other legacies contained in the proviso are alike inconsistent with the belief that this part of the bequest was to await all the limitations enumerated in the beginning of the clause. The provision for the support of Bigelow was payable as soon as any legacies can be (620) demanded, at the end of two years; the sum to be paid to Fanny was due at the age of twenty-one, and might become due while the daughter Anne was yet alive, who might after all have left issue and died under twenty-one, after the lapse of a long period from the time *Page 343 
the legacy was payable; or might have attained the age of twenty-one, and thereby have defeated the limitation over.
The consequence of this construction is, that of the property left to his daughter Anne part of it is limited over to his brothers upon any one of several contingencies happening; whereas, the other part, viz., money, debts, the proceeds of the sales, and the western lands, are given to them only upon one contingency, viz., "if he has no such child or children," and his daughter Anne, having survived him, the event has not occurred upon which they were to take. If this is the necessary construction of the will it must prevail, although a good reason cannot be given why the testator should have made such an arrangement of his property. If I were making a will for him I should probably have made all the limitations dependent on the same events. But on the other hand he might have had some reason for so doing, and he had a right to dispose of his property as he pleased. Now, if he designed to make them different he could have used no expressions more apt for the purpose than he has done. He enumerates all the contingencies when he gives the house and lot and Jack to William; he repeats them when he gives the two tracts of land to Levi; and if he had taken no further notice of them the subsequent devises in the same clause would have been subject to them. The introduction of part of them only when he disposes of the residue of the property may therefore have been designed. It would be a dangerous latitude of construction to say that the testator did not mean what he said unless we could clearly collect it from the whole will, more especially as such a conclusion would render absurd and senseless all the provisos (621) which are dependent on the other events.
The direction in the tenth clause as to the emancipation of the slaves is void, according to the decision in Craven's case, they consequently result to the next of kin of the testator.
With respect to the profits of the real estate there is nothing in the will to take them out of the operation of the general rule; that as the fee was vested in Anne, subject to be divested on her dying under age and unmarried, the profits which accrued from the death of the testator until her death belong to her administrator.