Daniel, J.
 

 This is an action of detinue to recover a slave by the name of Abram. Plea
 
 non detinet.
 
 In the year 1775, George Ingram made his will, and, after some devises of land, he says, “I leave the whole of my other estate, as well negroes as goods and chattels, to be equally divided between my four children, John, Tabitha, Jesse and Nancy Ingram; my executors to payoff each child’s part, as they shall come to age; the boys to have their part when they come to the age of twenty-one years, and the girls to have their part at the age of eighteen years. And if either of my children die without heirs lawfully begotten, then his or her part to be equally divided between my surviving children and their heirs forever.” John died in the the year 1800, leaving two children. Jesse died in 1835, never having had children. Tabitha survived him, and died in 1836, and the two Thread-gills, plaintiffs, are her administrators. Nancy is still alive, and she and her husband Howlett are the other plaintiffs.— The slave Abram is a descendant of a female slave, obtained by the legatee Jesse, under the will of his father with the assent of the executors. There was a demand of the slave before the writ issued, and the defendant refused to deliver him. The Court being of opinion,
 
 pro forma,
 
 that the plaintiff could not recover, there was judgment for the defendant, and the plaintiffs appealed.
 

 We think the Judge erred in deciding that the law was in favor of the defendant. It seems to us that this case is clearly within the principles decided by this court in the the two cases of
 
 Den ex dem. Zollicoffer
 
 v.
 
 Zollicoffer,
 
 4 Dev. & Bat. 438, and
 
 Gregory
 
 v.
 
 Beasley,
 
 1 Ired. Eq. Rep. 25. In the first case, the testator, having devised lands to three of his sons, and personal estate to his daughter, says,
 
 *580
 
 And in case of the death of either of my aforenamed children, without a lawful heir begotten of his or her body, that then his or her part shall be equally divided among the survivors” & was held, that, upon the death of one of the sons without children, the land he had acquired under his father’s will went over to his surviving brothers and sisters, and that the limitation was not too remote. In the latter case, a testator had bequeathed all his personal property to his four children, to be equally divided between them when his son A. arrived at the age of 21 years; and if one or two or three should die under age, or
 
 without issue,
 
 for all the property to go to the surviving ones for ever. A daughter died before her arrival at full age, leaving no children, but after A. had attained twenty-one years.
 
 Held that her
 
 share went over to the survivors then living; and that a child of a sister, who had died after attaining full age, was not entitled to any part of it. In the argument of the case before us, it seems to be admitted that it is the law of this State, that when property is given by will to children or a class of persons, and a limitation over to the survivor or survivors of the share or shares of any such children or class, who should “ die without issue,” or without “ heir lawfully begotten,” that the limitation over is good as an executory devise. But it is contended, that, when the testator, to the words “survivor or surviving.children” superadds the words, “and their heirs forever,” that circumstance will repel the inference, that the testator intended, that those only of his other children should take, who should be alive at the death of any one of them without issue. It is argued, that those superadded words make limitation too remote. In
 
 Hudson v. Massey,
 
 2 Meriv. Rep. 133, Sir William Grant admits that in a bequest to persons, with a limitation to the survivor in case either should did without issue, this is a good limitation. He says furnishes the presumption that the survivor was individu- and personally to take and enjoy the legacy. But he thought the superadded words, “ his or her executors, administrators or assigns,” excluded the presumption that it a mere personal benefit, that was intended for the surviHe said, that, though there should be no such failure
 
 *581
 
 of issue as would enable him to take personally, yet his representatives would be entitled to claim, in his right, whenever the failure of issue might happen. Now, with all due deference to so great a judge, it seems to us an impossibility, that any representative could ever urge such a claim as that supposed by Sir William Grant. Must not the representa-, tive deduce his title by averring that his principal was the survivor? Could the representative have any pretence of claim without such an averment? We think he could not. If, therefore, the representative’s principal was actually the survivor, he, the principal, must inevitably be permitted to take personally, and all chance of a perpetuity would of course cease. In the case now before the court, the super-added words (“and their heirs forever”) appear to us to have been inserted, only to denote the extent of the interest in the property, that the survivors should take, and not as a limitation to a description of persons, who might at at any indefinite time claim as
 
 heirs.
 
 How could a person claim as heir to a survivor, if the ancestor was not
 
 in esse
 
 at the death of the first taker, so as to acquire the character of survivor? The thing appears absurd. It seems to us, that no other presumption can arise in this case, but that the testator intended a personal benefit to the survivors, and that the superadded words, which he has made use of, do not repel that presumption.
 
 Hughs
 
 v.
 
 Sayer,
 
 1 P. W. 584.
 

 Secondly:
 
 John died in the year 1800. Did his two children or his representative take ? We think they do not take. The executory devise to John, in the legacy given to Jesse, was contingent; and, as John did not survive Jesse, the executory devise never vested in him; and, therefore, there was nothing tobe transmitted either to his representative or children. We so decided in
 
 Gregory
 
 v.
 
 Beasley.
 
 The case of
 
 Wilmot v. Wilmot,
 
 8 Ves. 10, is not an authority for the defendant. It was a bequest to three children in thirds respectively, with a direction that they should not be put in possession, till their respective attainment of particular ages (the son at 25, the two daughters at 21 years,) and in case of the death of either of the said children before the ages mentioned, that third
 
 to
 
 be equally divided between the two surviv
 
 *582
 
 ing children; and in case of the death of two of the children before they should obtain their respective ages,
 
 then
 
 the whole estate to devolve to the testator’s two brothers. One child attained the age mentioned — of course the two brothers, ^ ultimate remainder men, then could never take. After-wards another child died under age. And it was determined that the share of the latter was a
 
 vested interest
 
 in the child who died first, and the survivor attaining the specified age. The executory devise
 
 vested
 
 in those children that obtained the ages specified; and if they died afterwards, and then a younger child died under age, the share so being
 
 vested,
 
 devolved on the representative of the child, that had survived the specified age and first died. The peculiar circumstances of the case induced Lord Eldon to put upon the word “ survivor” a construction, which he admitted was not the natural or usual one. But in this case, the contingent estate, that was limited to John, never became vested; it could not vest, unless he had survived his brother Jesse: he did not, and his contingent interest has vanished forever. The judgment mustj therefore, be reversed, and judgment be entered for the plaintiffs on the case agreed.
 

 Per Curiam, Judgment accordingly.