# Mulert, Appellant, v. Real Estate Trust Company of Pittsburg.

*Landlord and tenant—Principal and surety—Entrance to relet—Release of surety.*

Where the lease of a large building provides that in case of default the lessor may re-enter and relet the premises or any part thereof for the unexpired term and receive the rentals until the sums owing by the lessee have been satisfied, a surety of the lessee who has stipulated that he shall only be liable for rents after the remedies provided by the lease have been exhausted, is not released from liability by reason of the lessor entering upon the premises, dividing the first floor into compartments by partitions, and reletting such compartments to different parties.

Argued Nov. 2, 1909. Appeal, No. 198, Oct. T., 1909, by plaintiff, from decree of C. P. No. 2, Allegheny Co., April T., 1909, No. 965, dismissing bill in equity in case of Justus Mulert, Trustee in Bankruptcy of Harry Davis, Bankrupt, v. Real Estate Trust Company of Pittsburg and Mary McClure. Before FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity to declare a surety released.

SHAFER, J., filed an opinion, which apart from certain matters relating to the defendant, the Real Estate Trust Company, was as follows:

## FINDINGS OF FACT.

The bill is by a trustee in bankruptcy for a decree that the Real Estate Trust Company has been released as surety for the bankrupt to Mrs. McClure, one of the defendants.

1. On February 15, 1906, Mrs. Mary McClure, one of the defendants, by written lease demised to Harry Davis the lot of ground at the southwest corner of Fifth avenue and Smithfield street, fronting about twenty feet on Smithfield street and extending back along Fifth avenue sixty feet, at an annual rental of $24,000 payable monthly in advance, for the term of thirteen years from April 1, 1906.

2. At the time of this demise there was erected on the lot a building which covered the whole lot, consisting of four stories and a basement, with access to the basement by an areaway on Fifth avenue, the whole of the first floor being in one storeroom, and the basement without partitions.

3. The lease allowed the tenant to remodel or alter the building during the term, allowed reletting, and provided that in addition to all remedies given by law, including the right of distress, in case the rent should be in arrears for thirty days, the lessor should have the right "1st. To enter the premises and, as agent of tenant, relet the premises, or any part or parts thereof, from time to time during and for any unexpired portion of the term and receive and retain the rent therefor until all the sums owing to lessor under this agreement then due or thereafter due, shall have been satisfied," and further, a right to forfeit and terminate the lease.

4. The Real Estate Trust Company, one of the defendants, by paper printed as exhibit "B" of the bill, became surety to Mrs. McClure for the rent of Harry Davis under this lease up to the sum of $48,000, the surety agreeing to pay the rent which should be due, "after the lessor has exhausted the remedies provided in said lease for the collection of same."

5. In order to indemnify the Real Estate Trust Company for this suretyship, Davis made a special deposit with the Real Estate Trust Company of $25,000 on which he was to receive interest, the terms of the deposit being set out in a paper printed as exhibit "C" of the bill. . . .

7. On April 1, 1906, Davis entered into possession of the premises, leased the upper stories to various tenants and occupied the ground floor himself, and rented the basement to a tenant. This mode of using the building continued until about the first of the year 1908, when the first floor was rented from month to month to a book auctioneer. About this time the city of Pittsburg required the closing of the areaway as a purpresture, and access to the basement was cut off, except through the storeroom. . . .

9. On January 1, 1908, Davis defaulted in the rent due Mrs. McClure for $2,000, and in like manner defaulted on Febru-

ary 1, 1908, so that in February, there was $4,000 rent in arrears. Negotiations were had between Mrs. McClure, by the Commonwealth Trust Company, her agent, and Davis during this time as to the rent, and on March 3, 1908, Davis was notified by the lessor that she intended, if the rent were not paid, to enter on the premises as agent for Davis and relet the same, under the terms of the lease. At about the same time, and during the same negotiations, the question of the advisability of dividing the first floor by partitions and letting to different tenants was discussed by Mrs. McClure's agent and Davis, Davis making no objection to doing so and furnishing to her agents the plans which he had himself prepared for making such a change.· . . .

11. On March 13, 1908, an involuntary petition in bankruptcy was filed against Davis, and Justus Mulert, plaintiff, was on the same day appointed receiver, having been afterwards elected trustee in bankruptcy.

12. On or about March 19, 1908, Mrs. McClure presented to the district court of the United States for the western district of Pennsylvania, her petition setting forth the amount of rent in arrear and the terms of her lease, and her desire to enter on the premises and relet them as agent for Davis, and praying for leave to so enter, to which petition the receiver answered, admitting the facts stated and averring that he had not entered into possession of the premises demised to Davis and as then advised he had no intention of doing so. Whereupon the court made an order granting the petitioner leave to enter and relet the premises. It is admitted by the parties that this was done merely for the purpose of avoiding any apparent discourtesy to the United States court.

13. At and before the time of the petition in bankruptcy the Commonwealth Trust Company was endeavoring to find a tenant for the whole of the first floor, and was in communication on this subject with the renting department of the Real Estate Trust Company, but being unable to find a tenant for the whole determined upon a subdivision, which was not communicated to the Real Estate Trust Company, except that in the renting negotiations they knew that it was proposed to

rent a part of the store to one Raubitschek in case a lease could not be made for the whole.

14. On March 23, 1908, Mrs. McClure entered upon the premises and began the work of subdividing the lower floor and the basement, which was effected by putting up two lath and plaster partitions on the first floor, and corresponding partitions in the basement and making a way into the basement from each portion of the first floor in place of the only way which existed before, which had been closed up by the city as above stated. These changes cost something over $4,000 and took some thirty days to make, and were made substantially in accordance with Davis' plan furnished to Mrs. McClure above mentioned, except that in one or two instances a pillar was placed in a different location from that shown in the plan. The making of these alterations so as to permit the first floor to be rented to different tenants was greatly for the benefit of all parties concerned and was the proper way to rent the premises so as to produce the largest income therefrom. The partitions are removable, and the building can easily be restored to its original condition.

15. On April 10, 1908, the Real Estate Trust Company paid to Mrs. McClure $6,000, being the rent for January, February and March. The rent for April was then in arrear since April 1. Mrs. McClure continued after this payment in possession of the premises and proceeded with the changes therein which she had already begun; and after April 2, Mrs. McClure rented the premises to different tenants, the whole amount of rent, however, being less than $2,000 a month. . . .

17. Upon a landlord's warrant issued for the rent due by one of the subtenants of Davis in the McClure property, March 1, 1908, there came into the hands of plaintiff, as receiver, the sum of $1,250, the money being paid over to him by agreement of the parties to await the determination of the question as to who was entitled to rents accruing before the bankruptcy.

CONCLUSIONS OF LAW.

1. No objection was made by any of the parties defendant to the jurisdiction, nor to the apparent multifarious character

of the bill, but, on the contrary, it was agreed by counsel that no such objection should be made.

2. As to the $25,000 special deposit, the plaintiff claims that the entry by Mrs. McClure upon the premises and the alterations made by her has discharged the Real Estate Trust Company as surety, either as having modified the terms of the contract, or amounting to an eviction, or worked a forfeiture. We are unable to see how the alterations in the building and the leasing of the first floor to three persons instead of one is in any way a change of the contract of the surety. The lease contemplated subletting, and the stipulation in the lease under which Mrs. McClure entered, expressly provides that she may relet the premises "or any part or parts thereof," and it must be understood that these parts might be separated from each other by partitions. It is claimed, however, that this clause authorizing the reletting by the lessor is repugnant to the nature of the estate granted, and amounts to nothing but a forfeiture clause and that the entry under it effects a forfeiture, or if not, is an eviction. We cannot see anything in this contract which is repugnant to the nature of the lease, but only an additional remedy which the lessor may have if the lessee makes default in payment. The case is strictly analogous to those cases in which it has been held that, without an agreement to that effect, the landlord may enter upon the premises from which the tenant has removed and relet them, giving credit to the tenant for the rents so received. The remedy was one which the surety itself stipulated should be invoked before it became liable for the rent. We are, therefore, of opinion that there is nothing in either the alterations of the premises or the reletting of them by Mrs. McClure which releases the surety from liability to her, and the surety is, therefore, entitled to retain the special deposit held by it as indemnity for this suretyship.

*Error assigned* was decree dismissing the bill as to Mrs. McClure.

*S. S. Robertson,* with him *M. L. Avner,* for appellant.

*R. B. Petty*, with him *Wm. F.* and *R. B. Petty, Jr.*, for Mary McClure, appellee.

PER CURIAM, January 3, 1910:

The decree is affirmed on the findings of fact and conclusions of law by Judge SHAFER.