RANSOM HAM et al. v. MARY J. HAM et al.

(Filed 31 March, 1915.)

**1. Wills—Intent—Interpretation.**
> In construing a will, the word "or" will be given the meaning of the word "and" when from the language employed in the paper-writing it appears that such was the testator's intent.

**2. Same—"Or" as "And"—Estates—Contingent Remainders.**
> In a devise of lands to the testator's four sons, "but should either of them die before arriving at the age of 21, or without children surviving

him," the word "or" should be read as "and," so as to require both contingencies to occur before the limitation over should take effect, and thus save the inheritance to the child or children of any of the sons who should die under age.

### 3. Same—Vested Interests.

A devise of lands to the testator's four sons, with provision, "but should either of them die before arriving at the age of 21, or without children surviving him," vests in each of the sons the title to his interest in the lands upon his becoming 21 years of age, without regard to his having or not having children.

### 4. Same—Survivorship.

A devise to the testator's four sons, with provision that the lands be partitioned when they attain the age of 21 years, and upon the death of each of the sons his share "shall go to the others that are living, but not to any of my other children," it appearing that the testator had other living children for whom he had also made provision, does not include within the intent and meaning of the limitation over the surviving child or children of a deceased son, the words "shall go to the others that are living" referring only to the testator's four sons who are named in the devise.

### 5. Same—Ultimate Survivor.

It appearing from a devise of lands to the testator's four sons that he intended successive survivorships, by directing that at the death of each under age, or without leaving children to survive him, then his or their share shall go to the others that are living," the question whether the last surviving son, or the last two of the surviving sons, would take the estate, is, under the facts of this case, immaterial, one of the last two having acquired the share of the other by purchase.

### 6. Wills — Separate Clauses — Interpretation — Intent — Phraseology — Substance.

A testator in separate items of his will devised different tracts of land to certain of his sons, with words having substantially the same meaning, but with slightly different phraseology, the first clause providing, by interpretation, a succession of interests in the sons, contingent upon their living longer than the others. Construing the will to ascertain the intent of the testator, it is held, under the facts of this case, that the difference in the phraseology used in the subsequent clause is immaterial.

### 7. Same—Contingent Limitations—Rule in Shelley's Case.

A devise of lands to the four sons of the testator upon contingency that "should either of the sons die before arriving at the age of 21, or leaving children surviving him, then and in that case his or their share shall be taken and equally divided between those who are living" is construed, under the circumstances of this case and in connection with another and relevant clause of the will, as if it had read "before" or "without leaving children surviving him," and the children of a deceased devisee may only inherit from his own father, and not take as purchaser under the will of the testator.

APPEAL by plaintiff from *Connor, J.,* at August Term, 1914, of WAYNE.

.This case, for the recovery of land, involves the construction of the will of Haywood D. Ham, Sr., who died on 31 May, 1859. He devised his home place, containing 175 acres, to his wife, Penny Ham, for life, and all the rest of the land of which he died seized and possessed to his four sons, Matthew J. Ham, George D. Ham, Erastus Ham, and Haywood D. Ham, Jr., "to be equally divided between them, but should either the said Matthew, George, Erastus, or Haywood die before arriving at the age of 21, or without children surviving him, then his or their share shall go to the others that are living, but not to any of my other children." The other tract of 175 acres he then devised to his said four sons, subject to the life estate of his wife, upon substantially the same limitations, though there is a slight difference in phraseology, the last devise being in these words: "Should either of my sons, Matthew, George, Erastus, or Haywood, die before arriving at the age of 21, or leaving children surviving him, then and in that case his or their share shall be taken and divided equally between those that are living"; the words, "but not to my other children," being omitted from this clause of the will. It is alleged in the complaint that, by other clauses of the will, "the testator made ample and equitable provision for all of his other children, and his widow, Penny Ham, is dead."

The said four sons attained to the age of 21 years and all died without leaving a child, except Matthew J. Ham, who left children. When the four sons were of age, the lands devised to them in their father's will was partitioned equally among them, and each of them took possession of the share allotted to him. The partition was made under the following clause of the will of Haywood D. Ham, Sr.: "Whenever the said Matthew, George, Erastus, or Haywood D., shall arrive at the age of 21, the one so attaining age may by petition have a division of the land that I have given them, have his share set apart in severalty, and the balance to be cast back and remain and continue to be held by the others as tenants in common, and as each one arrives at the age of 21 he may file a petition and have his share allotted to him, and so may each one as he attains the age of 21 continue to do."

George D. Ham died on 30 June, 1887, and his share was divided among the other three surviving brothers, Matthew J. Ham, Erastus Ham, and Haywood D. Ham, Jr. Matthew J. Ham died on 13 April, 1893, leaving children, who are the plaintiffs. Erastus Ham died 6 November, 1893, leaving a will, in which he devised his interest in the said lands, both his original and accrued shares, to his brothers and sisters of the whole blood, who sold and conveyed it to Haywood D. Ham, Jr., who died on 26 May, 1914, leaving a will in which he devised to .

certain of the defendants his original share in the lands of his father, which was devised to him, and as allotted to him in the division among the four sons, and that part of said lands which was allotted to Erastus Ham in the original partition, and also in the division of the share of George D. Ham, he claiming to have purchased the same from the devisees of Erastus Ham, the said Haywood D. Ham, Jr., having conveyed the part allotted to him in the division of the share of George D. Ham to the children and heirs of Matthew J. Ham, who conveyed to Haywood D. Ham, Jr., the part allotted to them in the division of the share of Erastus Ham, which seems to have been an exchange of the said interests.

Plaintiffs further allege in their complaint that they are the owners and entitled to the possession of the land described in the complaint, being a part of that willed by Haywood D. Ham, Sr., to his four sons, and which were devised by Haywood D. Ham, Jr., in his will to certain of the defendants. The defendant Mary J. Ham is the widow of Haywood D. Ham, Jr., deceased, and is in possession of all the said lands; defendants Nancy Hill and Mary A. Casey are sisters of the four sons, Matthew, George, Erastus, and Haywood, who are the devisees under the will of Haywood D. Ham, Sr.; the defendants Carrie Harrell, Bertha Casey, Will Casey, Lou Pearl Edwards, Eva Casey, and S. J. Casey are the children of Ellen Casey, deceased, another sister of the said devisees, the said sisters being the children of Haywood D. Ham, Sr.; and Curtis Howell and Rachel Howell are grantees of Haywood D. Ham, Jr., as to 3 acres of said land. The prayer of the complaint is that plaintiffs be declared to be the owners of the land therein described, and entitled to the immediate possession thereof, and for costs.

Defendants demurred to the complaint upon the ground that under the will of his father and the deeds executed to him, Haywood D. Ham, Jr., was seized and possessed of the said lands at his death, and by his will they were devised to certain of the defendants, who thereby became and are now the owners thereof.

The court held that upon the death of Matthew J. Ham, leaving surviving him the plaintiffs as his children and heirs at law, the share of the said Matthew J. Ham in the division of the lands of Haywood Ham, Sr., descended to the plaintiffs as the heirs at law of said Matthew J. Ham, together with an undivided one-third interest in the share of George D. Ham in the said division of the lands of Haywood Ham, Sr.; that upon the death of Erastus Ham, his share in the division of the said lands of Haywood Ham, Sr., passed by the will of Erastus Ham and subsequent deeds to Haywood D. Ham, Jr., in fee, together with the one-third interest of Erastus Ham in George D. Ham's share in said division of the lands of Haywood D. Ham, Sr.; that upon the death of

Haywood D. Ham, Jr., there being no survivors of the brothers, the share of Haywood D. Ham, Jr., in the division of the lands of Haywood Ham, Sr., together with the share which passed to him from Erastus Ham and the one-third interest in George D. Ham's share in said division, passed under the will of Haywood D. Ham, Jr., to the defendants, and thereupon sustained the demurrer.

Plaintiffs appealed from the judgment.

*Robinson & Robinson, W. A. Thompson, and Langston, Allen & Taylor for plaintiffs.*

*Dortch & Barham, W. W. Peirce, and M. T. Dickinson for defendants.*

WALKER, J., after stating the facts: The plaintiffs are the children and heirs at law of Matthew J. Ham, and claim to be the owners of the land in dispute under the will of their grandfather, Haywood D. Ham, Sr., upon the ground that they are the last survivors of the four sons mentioned in said will, within the meaning and intent of the testator, as expressed therein or as clearly to be implied from the language used by him.

It has been settled by several cases decided by this Court, and many in other jurisdictions, that the word "or" last used in the sentence, "but should 'either of the said Matthew, George, Erastus, or Haywood die before arriving at the age of 21, *or* without children surviving him," should be read as "and," so as to require both contingencies to occur before the limitation over should take effect, and to occur during minority, this construction being necessary to save the inheritance to the child or children of any son who should die under age, according to the undoubted intention of the testator. There are two cases decided by this Court which are typical of all those upon the subject. The first is *Dickinson v. Blount*, 5 N. C., 380, in which it appeared that the testator devised certain land to his grandson, William S. Stewart, in fee, with the limitation that if he died before he arrived at lawful age or without leaving issue, the land should go to his other grandson, John Spier, in fee. *Judge Taylor* said: "According to a literal construction of the will, the occurrence of either event would vest the estate in John Spier; but it is evident that such was not the testator's intention, and this intention ought always to be effectuated when it does not contravene the rules of law.. He could not have intended that the issue of William Spier Stewart should be deprived of the estate if their father died under age; for that would operate to take all from those who appear to have been the principal objects of his bounty; yet such would be the effect of a literal interpretation of his will. His intention seems to have been that the fee should remain absolute in William S. Stewart on the happening of either event, either his leaving issue or attaining to lawful age; or,

in other words, that both contingencies, towit, his dying under age and without leaving issue, should happen before the estate vested in John Spier. To give effect to this intention, it is necessary to construe the disjunctive *or* copulatively; and there are various, clear, and direct authorities which place the power of the court to do this beyond all doubt." And in *Turner v. Whitted,* 9 N. C., 613, construing a similar devise and approving *Dickenson v. Blount, supra,* the Court said: "Many cases have established the propriety of so construing it ('or') in wills of this kind, otherwise the property would be carried over if the first devisee died under the age of 21, though he had left issue, when the intent of the devisor was that both events should happen, the dying under 21 *and* without issue, before the estate should go over. So that at the age of 21 it was intended that the daughter should have the power of disposing of the estate absolutely, and of making what provision she pleased for her issue, if she should have any; but in the event of her dying before 21, that her issue should not be deprived of the inheritance." So in *Hilliard v. Kearney,* 45 N. C., 221, *Judge Pearson* puts this case: "A gift to A., if he arrives at the age of 21, but if he dies without a child, the property is to go to B.; the intermediate period is adopted, and the gift is absolute at his age of 21," citing *Horne v. Pillars,* 2 M. and K., 22. He says, in another part of the opinion: "It should be borne in mind that this is not a limitation to several children, with a condition that if one or more should die under the age of 21, and unmarried, their shares should go to the survivors or survivor, which is a very usual limitation in wills, and a very reasonable one, for the ownership is restrained only until the child has discretion, or marries, and should be settled in the world. The restraint being a reasonable one, it is probable the testator intended to apply it to all of the children under like circumstances, and the Court incline, in the absence of express words, to imply a succession of survivorships, from the fact that the same reason was applicable to all." The rule is well expressed in *Parker v. Parker,* 5 Metcalf (Mass.), 154: "We think this is one of the cases in which the word 'or' will be construed to mean 'and' in order to carry the testator's intention into effect. The manifest object of the testator was, we think, that if the son who was the first object of his bounty should die without leaving children to take after him, and whilst he was under age, so that he could not make any disposition of the property on account of the incapacity of nonage, then the testator intended to make disposition of it himself. But if the son should leave no children, but still if he should arrive at an age at which the law would allow him to dispose of real estate by his own act by deed or will, then it was intended that the gift to him should be absolute, and the devise over would fail." The Court, in *Doebler's Appeal,* 64 Pa. St., 1, after stating and commenting on the rule, added,

that "this construction has been so conclusively settled as to have become one of the landmarks of the law not now to be shaken." See, also, *Soulle v. Gerard,* Cro. Eliz., 525; *Janney v. Sprigg,* 48 Am. Dec., 557, 566, and note; 19 A. and E. Anno. Cases, pp. 924-5; 30 A. and E. Enc. (2 Ed.), 692; *Alston v. Branch,* 5 N. C., 356; *Lindsey v. Barefoot, ibid.,* 494; *Arrington v. Alston,* 6 N. C., 322; *Gregory v. Beasley,* 36 N. C., 26; *Hilliard v. Kearney,* 45 N. C., 221; *Cheek v. Walker,* 138 N. C., 447; *China v. White,* 5 Rich. Eq., 426; 25 L. R. A. (N. S.), 1160, and note; 1 Underhill on Wills, pp. 447, 504; *Phelps v. Bates,* 1 Am. St. Rep., 92; 2 Fearne on Rem., sec. 235. *Chancellor Kent* said in *Jackson v. Blansham,* 5 Am. Dec., 188, a case like this one: "It is now to be hoped that the question on the construction of those words in a will may never hereafter be revived," so sure was he that it had been settled and closed by the courts for many years. We, therefore, conclude, on this branch of the case, that the share of each of the sons would have vested absolutely and unconditionally in him when he arrived at the age of 21 years, whether he had children or not, and the same would have been the result if he had children during his minority. Matthew D. Ham was the only son who had children, but his share became absolute when he attained to full age, and the same was the result as to all of the brothers, for they had arrived at full age and died without children, and the share of each vested absolutely on his coming to full age.

The next question is whether the plaintiffs acquired any interest in the land by reason of the fact that they survived the other brothers of their father, who died without children, upon the theory that they fall within the class intended to take under these words of the will, "then his, or their, share shall go to the others that are living, but not to any of my other children." But we are unable to agree with this view. Both authority and reason are against it. We would be perverting the language of the will should we so construe it, and it would be necessary to write words into the instrument which are not there. It is clear that the testator used the words, "shall go to the *others that are living,*" in the passage above quoted, in the sense of the survivors of the brothers, which would not include the children of a deceased brother, because the word "others" plainly refers to them, the brothers, when read with what precedes it, and it is immediately followed by the expression, "but not to any of my *other* children" (italics ours), which demonstrates that the word "other" meant only children, and they could only be the sons, as it referred to the children before mentioned in the will. That this is the plain, natural, and grammatical construction is hardly arguable. This brings the case directly within the following authorities. It appeared in *Threadgill v. Ingram,* 23 N. C., 577, that a testator had bequeathed all his personal property to his four children, to be equally

divided between them when his son A. arrived at the age of 21 years; and if one or two or three should die under age, or *without issue,* all the property to go to the surviving ones forever. A daughter died before her arrival at full age, leaving no children, but after A. had attained 21 years. It was held that her share went over to the survivors then living, and that a child of a sister, who had died after attaining full age, was not entitled to any part of it. *Judge Daniels* added: "Must not the representative deduce his title by averring that his principal was the survivor? Could the representative have any pretense of claim without such averment? We think he could not. How could a person claim as heir to a survivor, if the ancestor was not *in esse* at the death of the first taker, so as to acquire the character of survivor? The thing appears absurd. It seems to us that no other presumption can arise in this case but that the testator intended a personal benefit to the survivors; and that the superadded words which he has made use of do not repel the presumption." And the language of *Judge Pearson,* in *Hilliard v Kearney,* 45 N. C., 221, is equally emphatic: "The argument fails, because there are no words showing an intention to give a preference to such of the daughters as died leaving children, except to the extent of making the shares absolute at their deaths. . . . There is this further objection: If the words 'other sisters' do not refer to the death of one, so as to be confined to the survivors, and is allowed to take in the others also, there is nothing to exclude such as had died without a child, which is absurd." To the same effect are *Threadgill v. Ingram,* 23 N. C., 577; *Zollicoffer v. Zollicoffer,* 20 N. C., 574; *Lowry v. O'Bryan,* 57 Am. Dec., 727. In *Spruill v. Moore,* 40 N. C., 284, the testator gave property to his daughters, naming them, as the sons are named in this will, and annexed this condition to the gift: "If either of my daughters should die without lawful issue, then and in that case the survivors or survivor of my said daughters shall have all the said negroes and their increase forever." The Court, through *Chief Justice Ruffin,* said: "There is no doubt that each of the daughters took a vested interest in the slaves, subject to be divested upon her death without leaving issue, and to go over as long as there was one or more of them who could take by survivorship." One of the daughters died leaving a child, and, holding that a child could not represent the parent as a survivor, the Court said: "Although one may regret the exclusion of Mrs. Moore's child, yet the Court cannot help it. It is clear that the testator contemplated and intended to provide for the happening of the death of more than one of his daughters without issue, from the fact that the limitation over is, first, to the survivors, and then to the survivor in the singular. It is conclusive that the survivorship as to the original parts at least was to continue on until a sole survivorship should happen, after which, of

course, there was to be an end of the matter, as there could be no one else. to take." That case is almost identical with the case at bar in its facts, as the wording of the limitations in the two wills is practically the same, and one of the four daughters died leaving a child to survive her, while here Matthew J. Ham left several children; but the plurality of issue can make no difference in the construction of the two wills. *Holcomb v. Lake,* 24 N. J. (4 Zabriskie), 686, is a very instructive case upon the subject and a strong authority in favor of our construction. The Court there said: "It is suggested that this is an *unreasonable* construction, because when the testator made his will, both his daughters were married and had children, and that he could not have intended that if one should die before John, the other should take the whole estate, to the exclusion of her deceased sister's children, which would be the effect, in such a case, of this construction. But the answer to this is, the word 'surviving' is here in the will, put here by the testator; he meant something by it, and that something was that such of his children who survived *somebody* should take, and such as did not survive should not take." And it was further said, referring to *Lessee of Westbrook v. Romeyn,* Baldwin's R., 196: "There Abraham Van Campen conveyed lands to his son Moses, and to the heirs of his body lawfully begotten or to be begotten, and in default of such issue, *then* to the *surviving sons* and daughters of Abraham, in certain shares. And the Court said: 'The word *then* denotes the time when the interest vests in them to be at his (Moses') death, as well as the person to take, that is, those who shall then be the survivors of Moses.' That, 'as a general rule, words of survivorship relate to the time or event when the thing devised is to be distributed or enjoyed, and not to the time when the will took effect by the testator's death.' " The case of *Milsom v. Audrey,* 5 Vesey, 465, is, if possible, even more analogous, and the words "survivors" and "survivor" were there construed according to their strict literal meaning, although such construction led to intestacy. It has been held that the shares of the third of the four nephews, who had died without issue, belonged exclusively to the survivor of them all, excluding the children of one who had previously died. *Lee v. Stone,* 1 Mees. and Wels. (Exch.), 673; *Leeming v. Sherratt,* 24 Eng. Ch. Rep. (2 Hare), 14; *Prendergast v. Walsh,* 58 N. J. Eq., 149. We find the following clear statement of the doctrine in 1 Underhill on Wills, sec. 351: "The question arises in disposing of the shares of those who die *without issue,* whether the children of deceased legatees shall participate or whether it is to go only to the actual *survivors of the original class.* The plain and strict signification of the word 'survivor' is one who outlives others, and in the above devise the word should receive its strict meaning, *excluding the children, and also the next of kin of those who have died before distribution.* This

natural meaning will be given to the words, and those only will take as survivors who are living at the death of the others without issue, in the absence of anything in the will clearly showing that the testator has employed the word with any other intention. This rule of construction is applied to a limitation to survivors, though the testator has in fact expressly provided that the children of a deceased legatee shall take, by representation, the share which *their* parent had enjoyed. Though they may take *this,* they cannot take the share of one who has died without issue, for *that* goes to those only who survive the legatee so dying."

It appears from the will that the testator intended that there should be successive survivorships as between his four sons mentioned in the devises, for he directs that, at the death of each under age, or without leaving children to survive him, "then his *or their* share shall go to the others that are living," and it may be that, in the event named, his will was that the last survivor should take the interests of those who had thus died, though it is not material to decide whether it would go only to the last two survivors instead of the last survivor, as Erastus, who was one of the last two survivors, devised his share to certain persons, who conveyed to the last survivor, Haywood D. Ham, Jr.; but we are sure that there are no words in the will under which these plaintiffs, as children of Matthew J. Ham, can take as survivors, and this is sufficient to dispose of the case, without regard to the manner in which the last survivor of the four sons acquired the sole interest in the property that did not, under the terms of the will, go to the other brothers.

We attach no importance to the difference of phraseology in the two devises. The word "without" was clearly omitted before the words "leaving children surviving him," in the second devise, or the word "before" is implied, so that it should be, "before arriving at the age of 21," or "before," or "without leaving children surviving him," for if the son left children, the testator manifestly intended that they should take by *descent* from their father, though they could not take, as purchasers, under the will. *Whitfield v. Garris,* 134 N. C., 24.

The plaintiffs rely on the use by the testator of the words, "but not to any of my other children," which are annexed to the first gift to the four sons; but it is evident that these words were intended merely to free his meaning of any doubt and to express more clearly his desire that none of his other children, for whom he had amply provided, should further participate in his bounty *under the will,* and thereby prevent the *surviving* sons from taking, however much they, "the other children," might get by will or descent from a brother whose interest had become indefeasibly vested in him.

We may regret that we are forced to the conclusion that plaintiffs can take nothing under the will, as survivors of the four sons, but the mean-

ing of the testator is so obvious that we could not decide otherwise. There is no rule of higher obligation in the construction of wills than this, that the language of the testator must govern, unless there are clear indications of a contrary meaning to be found in the instrument, considering it altogether. We must take care how we indulge in speculations as to the intention of testators, our province being not to make wills for them as we may think they ought to be, but to interpret fairly and according to established rules of law such as they have made for themselves. A testator must be his own interpreter when he expresses himself in language free from obscurity and which, as he employed it, conveys a certain and definite meaning, to the exclusion of any other. It may be that if the testator could have anticipated what has actually happened, he would have provided for such a contingency, but he does not appear to have done so, and it is not our duty, or our privilege, to supply the omission by reading into his will something that he did not see fit to put there. *Holcombe v. Lake, supra; Bartholomew's Estate,* 155 Pa. St., 314; *Bender v. Bender,* 226 Pa., 602.

We are unable to see any clear indication in this will that the testator did not intend to do just what he, in fact, did, according to the plain meaning of the language he has used, viz., confine his bounty to his surviving son or sons, irrespective of the issue of any deceased child. Mrs. Penny Ham, the widow of the testator, died in 1884, as admitted in this Court; but this cannot affect the result, and only makes the case stronger, if possible, against the plaintiffs. See *Holcombe v. Lake,* 4 Zab., 690.

It is unfortunate that a case of this kind should be tried on demurrer, but we can now see no facts, not stated in the record, which could possibly change the views we have expressed.

Affirmed.