JAMES W. DICKS ET AL. v. JOHN YOUNG ET AL.

(Filed 11 May, 1921.)

1. **Wills—Interpretation—Intent—Changed Condition of Estate.**

The primary rule of interpretation is to ascertain from the language of the will, construed as a whole, the intention of the testator in disposing of his estate, and this intent controls without any supposition as to what he would have done with his property under changed conditions.

2. **Wills—Interpretation—Intent—Ambiguity.**

Where, in expressing his intent, the testator uses in his will words that are free from ambiguity and doubt, no other meaning may be given than that plainly, clearly, and distinctly expressed by them.

**3. Same—Survivorship—Children—Grandchildren—Estates— Contingent Limitations.**

 A devise of lands to the testator's wife for life, and at her death to be equally divided among his four named children, "but if either of them shall die without leaving a child or children living at their death, then the portion of such child so dying shall go to the survivors of them and their heirs forever": *Held*, the words "survivors of them" refer to the survivor of the testator's own children, to the exclusion of grandchildren whose parents, named in the will, have previously died. *Ham v. Ham*, 168 N. C., 486, and other like cases cited and applied.

APPEAL by defendants, heard on case agreed by *Ray, J.*, 30 November, 1920, from STOKES.

This is a proceeding for partition of land tried on the following agreed facts:

1. That Williams H. Flynt, late of the county of Stokes, in the State of North Carolina, died on or about the ........ day of ........, 187...., leaving a last will and testament, which was duly admitted to probate in the county of Stokes on 27 January, 1877, and recorded in Will Book No. 6, p. 82, item 3 of which is as follows:

"I give, bequeath and devise unto my beloved wife, Minerva Flynt, all my real estate, consisting of the two above mentioned tracts of five hundred and fifty acres, more or less, and five hundred and thirty-two acres, more or less, including a tract of one hundred and twenty-six acres, more or less, known as the Hawkins tract; also two horses and wagon and farming untensils; to hold and to have absolute and full control of during her natural life and at her death to be equally divided between my four children, to wit: Margaret J. Dicks, William J. Flynt, James D. Flynt, and Walter M. Flynt, share and share alike; but if either of my children shall die without leaving a child or children living at their death, then and in that case it is my will and desire that the portions of such so dying as aforesaid shall go to the survivors of them and their heirs forever."

2. That Margaret J. Dicks, one of the children named in said will, died before her mother, Mrs. Minerva Flynt, the life devisee, and before any of the other children of said testator, leaving her surviving three children, the plaintiffs, James William Dicks, Lou Claudia Cates, and Minerva Lee Dicks.

3. That after the death of Mrs. Minerva Flynt, the life devisee, a partition of the lands set forth in said will was duly made between the surviving children of the testator, to wit: William J. Flynt, James L. Flynt, Walter M. Flynt, and the children of Margaret J. Dicks, deceased, to wit: James William Dicks, Lou Claudia Cates, and Minerva Lee Dicks, and one-fourth in value of said land assigned in said partition to the said children of Margaret J. Dicks, as representing their

29—181

mother. That the tract of land described in the petition, containing 184 acres, was assigned in said partition to James L. Flynt, one of the children of William H. Flynt, named in said will.

4. That on 24 January, 1912, James L. Flynt and his wife conveyed by proper deed the 184 acres of land described in the petition to Walter M. Flynt and William J. Flynt, which deed is recorded in the register's office of Stokes County, in Book No. 56, p. 214; and thereafter, on 27 July, 1912, the said Walter M. Flynt and William J. Flynt, together with their wives, conveyed by proper deed with warranty the said 184 acres of land to R. M. Cardwell and J. H. Moore, which deed is recorded in the office of the register of deeds for Stokes County, in Book No. 56, p. 354.

5. That on 12 August, 1912, R. M. Cardwell and wife and J. H. Moore and wife conveyed by proper deed to the defendant John A. Young 80 acres, more or less, of the 184-acre tract of land set out in the petition herein, being the same tract described in the answer of John A. Young herein, and of which he claims *sole seizin;* that on 5 October, 1912, the said R. M. Cardwell and wife and J. H. Moore and wife conveyed by proper deed to one Hunter Manual 63½ acres, more or less, of the 184-acre tract set out in the petition herein, being the same tract described in the answer of Roscoe Gann herein, of which he claims *sole seizin* through *mesne* conveyances from the said Hunter Manual; that on 23 December, 1913, the said R. M. Cardwell and wife and J. H. Moore and wife conveyed by proper deed the remainder of the 184-acre tract of land described in the petition herein to the defendant J. Frank Dunlap, said remainder containing 47.75 acres, more or less, and being the same tract of land set out in the answer of J. Frank Dunlap, of which he claims *sole seizin.*

6. That Walter M. Flynt, one of the children of William H. Flynt, named in the will of William H. Flynt, died before his brother James D. Flynt, leaving him surviving his children, the defendants Cary Flynt, Ethel Tilley, Ella Flynt and Hilary Flynt, and that after the death of the said Walter M. Flynt, James D. Flynt, one of the children of William H. Flynt, named in his will, died without issue, leaving him surviving his brother William J. Flynt, as the last survivor of the children of the testator, William H. Flynt, and also left him surviving the children of Walter M. Flynt and Margaret J. Dicks hereinbefore named.

7. That William J. Flynt and Cary Flynt disclaim any interest in the lands set forth in the petition herein, and the defendants John A. Young, J. Frank Dunlap, and Roscoe Gann claim *sole seizin* of their respective boundaries of said land, set forth in their respective answers, by *mesne* conveyances from William J. Flynt, the last survivor of the children of William H. Flynt, named in his last will and testament.

His Honor held and entered judgment accordingly that the plaintiffs, who are the children of Margaret, are entitled to one-third of the land, and the defendants excepted and appealed.

*E. B. Jones and McMichael & Johnson for appellees.*
*N. O. Petree and J. D. Humphreys for appellants.*

Allen, J. The land in controversy is the share allotted to James D. Flynt, who had no child at his death, and who left surviving him a brother, William J. Flynt, and children of his deceased brother, Walter M. Flynt, and of his sister Margaret.

Do the children of Walter and Margaret take under the will or does the share of James go to William J. Flynt, who is the sole survivor of the four children named in item 3 of the will?

The determination of the question depends on the proper construction of the language "but if either of my children shall die without leaving a child or children living at their death, then and in that case it is my will and desire that the portions of such so dying as aforesaid shall go to the survivors of them and their heirs forever," and particularly of the words "survivors of them and their heirs forever."

The primary rule, which has been adopted by the courts as a guide, is to ascertain the intention of the testator from an examination of the whole will, and it is his intent when the will was made, and not what it may be supposed he would do with his property under changed conditions, that controls.

It is also a correct principle, applicable alike to statutes, contracts, wills, etc., that "The intent of the framers and parties is to be sought, first of all, in the words employed, and if the words are free from ambiguity and doubt, and express plainly, clearly, and distinctly the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation. Black Inter. Laws, 37." *Kearney v. Vann,* 154 N. C., 315.

The testator here uses no language that is not easily understood. He gives a large tract of land to his wife for life, and after her death to four children, who are named. He then provides that if either of the four children die without leaving a child living at "their death" the share of such one so dying shall go to "the survivors *of them,*" which can only mean survivors of the four children.

In Underhill on Wills, Vol. I, sec. 351, the rule of construction, as applied to facts like ours, is stated as follows:

"A question of construction frequently arises where the testator devises property, whether real or personal, to several devisees or to a class, *but if any of them should die without leaving issue,* or during

minority, or on another contingency, his share to go *to the survivor or survivors,* and one or more of the primary devisees dies *without* leaving issue or under age, while others die leaving issue or attain majority. The question arises in disposing of the shares of those who die *without issue* whether the children of deceased legatees shall participate, or whether it is to go only to the actual *survivors of the original class.* The plain and strict signification of the word 'survivor' is one who out-lives others, and in the above devise the word should receive its strict meaning, *excluding the children, and also the next of kin of those who have died before distribution.* This natural meaning will be given to the words, and those only will take as survivors who are living at the death of the others without issue, in the absence of anything in the will clearly showing that the testator has employed the word with any other intention.

"This rule of construction is applied to a limitation to survivors, though the testator has in fact expressly provided that the children of a deceased legatee shall take, by representation, the share which *their* parent had enjoyed. Though they may take *this,* they cannot take the share of one who has died without issue, for *that* goes to those only who survive the legatee so dying."

In case of *Threadgill v. Ingram,* 23 N. C., 577, the clause in the will which was construed, to wit: "I leave the whole of my other estate, as well negroes as goods and chattels, to be equally divided between my four children, John, Tabitha, and Nancy and Jesse Ingram; my executors to pay off each child's part as they shall come to age; the boys to have their part when they come to the age of twenty-one, and the girls to have their part at the age of eighteen years. And if either of my children die without heirs lawfully begotten, then his or her part to be equally divided between my surviving children and their heirs forever," is very much like the will now before us.

John Ingram died in the year 1800, leaving two children; Jesse Ingram died in the year 1835, without issue; Tabitha Ingram died in the year 1836, and the plaintiffs Threadgill were her administrators, and Nancy Ingram was still alive at the time of the suit.

In that case it was contended that the children of John Ingram (John having died before his brother Jesse) were entitled to share in the property devised and bequeathed to Jesse, but the Court held otherwise. In that case it was contended that the four superadded words, to wit, "and their heirs forever," would let in the children of John to share in the property of Jesse, devised and bequeathed in the will, although Jesse had died without children, but such contention was not sustained by the Court, the Court saying, "Must not the representative deduce his title by averring that his principal was a survivor? Could the representa-

tive have any pretense of claim without such averment? We think he could not. If, therefore, the representative's principal was actually the survivor he, the principal, must inevitably be permitted to take personally, and all chances of a perpetuity would of course cease. In the case now before the Court, the superadded words ('and their heirs forever') appear to us to have been inserted only to denote the extent of the interest in the property, that the survivors should take, and not as a limitation to a description of persons who might at any indefinite time claim as heirs. How could a person claim as heir to a survivor if the ancestor was not *in esse* at the death of the first taker, so as to acquire the character of survivor? The thing appears absurd. It seems to us that no other presumption can arise in this case, but that the testator intended a personal benefit to the survivors, and that the superadded words which he made use of do not repel the presumption.

"Secondly. John died in the year 1800. Did his two children or his representative take? We think they do not take. The executory devise to John, in the legacy given to Jesse, was contingent; and as John did not survive Jesse, the executory devise never vested in him; and, therefore, there was nothing to be transmitted either to his representative or children."

All of the cases in our Reports, and many of the authorities elsewhere, are considered in *Ham v. Ham,* 168 N. C., 486, and the same conclusion reached.

We are therefore of opinion his Honor was in error in holding that the children of Walter and Margaret take any part of the share of James under the will.

Reversed.