E. T. HERRING and Wife v. CARRIE WILLIAMS and JOHN H. GREEN.

(Filed 19 October, 1910.)

1. **Wills, Interpretation of.**

In construing a will the primary purpose of the court is to ascertain the intention of the testator from the language used, and the entire will must be considered.

2. **Same—Conditions and Surroundings.**

It is competent to consider, in determining the intent of the testator, the condition of his family, how he was circumstanced, and his relationship to the objects of his testamentary disposition, so as nearly as possible to get his view-point at the time the will was executed.

3. **Same—Life Tenant—Conveyance of Fee—Powers.**

It appearing that the plaintiff was adopted by the testator and his wife, who had no children of their own, was raised by them and was living with them at the time of his death; that the property of deceased consisted chiefly of a farm, and a house and lot, all of small value or income, the testator apparently obtaining his living by employment as overseer, which constituted the principal source of support for his wife and foster child; and that he devised to his wife all his property, "to have and to hold during the term of her natural life, and at the death of my wife, the said property, or as much thereof as may be in her possession at the time of her death," to the plaintiff, "her heirs and assigns forever." *Held*, that by the express terms of

the will, the wife took a life estate with the power to dispose in fee of the property during her life, and that the plaintiff took, as the devisee of the remainder in fee, the real estate undisposed of by the wife.

APPEAL from *Guion, J.,* at the March Term, 1910, of NASH.

In August, 1902, William R. Williams died, resident in Nash County, seised of a tract of land containing about a hundred acres, of two town lots in the city of Rocky Mount, and of a small quantity of personal property. He left surviving him his widow, the defendant, Carrie Williams. He had no living children born to him and his wife, but when the *feme* plaintiff, Bettie Herring, whose maiden name was Bettie Melton, was only ten weeks old, he adopted her and took her into his home as his foster child. On 11 March, 1902, four months prior to his death the said William R. Williams had his neighbor, J. B. Stokes, to write his will for him, and in that will he disposes of and devises his property as follows, to-wit:

"I give and bequeath unto my beloved wife, Carrie Williams, all my property—real, personal and mixed—of what nature or kind soever, and wherever the same may be situate at the time of my death, to have and to hold during the term of her natural life; and at the death of my wife, the said Carrie Williams, the said property or as much thereof as may be in her possession at the time of her death, is to go to Bettie Melton, her heirs and assigns, forever."

Upon the death of the testator, the widow and life tenant Carrie Williams went into the possession of all the testator's land and personalty. On 23 February, 1903, she conveyed the real estate in fee to her brother-in-law, the defendant Green, in exchange for land conveyed by him to her. Green, having thus gotten possession of the land, proceeded to cut from the one-hundred acre tract—being the only timbered land of which the testator died seised—all the standing timber growing thereon. It is admitted by the defendants that no part of the buildings and improvements, which were subsequently put on this tract of land by Green, were constructed from the timber which he cut and removed. It is further admitted that he cut the timber "solely for the purpose of sale and profit, and not for the cultivation

of the land or to increase the amount of cleared land for the purposes of cultivation." He received for the standing timber, on 5 March, 1905, the net sum of four hundred and fifty-eight dollars.

The plaintiff demanded judgment for the waste committed and the forfeiture of the life estate. The contentions of the defendants were that Carrie Williams, the wife of the testator, under the provision of this will above quoted, had full right and power to dispose of any and all the real estate devised by her husband, and that the plaintiff, Bettie, was entitled to only such of his property as remained undisposed of at his wife's death, and, therefore, the plaintiff had no cause of action against them. His Honor held against this contention of the defendants and adjudged that "under the will of the testator, the defendant Carrie Williams became and was entitled to an estate for life, and that the plaintiff Bettie is the owner of a vested remainder in fee in all the lands of which the testator died seised, after the death of his wife and the falling in of the life estate;" and that the deeds of Mrs. Williams to Green conveyed only the life estate of Mrs. Williams. The defendant Green also contended that he could offset the waste charged by showing the value to the inheritance of the buildings erected by him on the land. His Honor held against the defendants on this contention. The jury having found that there was waste and assessed the damages at $458, his Honor rendered judgment declaring the estate of plaintiff, Mrs. Melton, under the will of Mr. Williams, to be in fee, for the amount of damages found by the jury, and further adjudging that if the money judgment was not paid by a day named, the estate of the defendants in the wasted land should be forfeit to the plaintiff. The defendants moved for judgment as of nonsuit, but this was overruled. The defendants appealed.

*Bunn & Spruill* for plaintiffs.
*T. T. Thorne* and *J. C. L. Harris* for defendants.

MANNING, J. The primary purpose of the courts, when a will is presented for construction, is to ascertain the intention of the testator from the language used by him. In ascertaining

such intention, the entire will must be considered, and it is competent to consider the condition of the testator's family, how he was circumstanced, and his relationship to the objects of his testamentary disposition, so as nearly as possible to get his viewpoint at the time the will is executed. In the present case, the testator's family was composed of his wife, the defendant Carrie Williams, and his foster-daughter, the plaintiff Mrs. Bettie Herring. He had no children of his own, and he and his wife had raised the *feme* plaintiff from an infant ten weeks old. She was living with the testator and his wife at the time of his death. The testator's estate consisted of a few articles of personal property of small value; a tract of land of about 100 acres, of which the arable land was sufficient for a one-horse farm; the buildings and the arable land were only in fair condition, and the remainder of the land was timber land; also a house and lot in the town of Rocky Mount and an unimproved lot in the same town. The tract of farm land was worth, at his death, about $1,250 or $1,500; the evidence does not disclose the value of the house and lot or the unimproved lot, but the inference from the evidence is that they were not of large value, probably not exceeding $1,000 or $1,200. At the time of his death, the testator was employed as an overseer of another farm, and his own farm was rented, and his income from his work must have constituted the principal source of support for his wife and foster child. The will itself furnishes sufficient proof of the affection of the testator for his wife, and we will assume that he entertained feelings of affection for his foster daughter. It is clear, from the language of the will, that a life estate is vested in the wife, and a remainder in fee in the *feme* plaintiff. It is equally clear that the life estate vested in the wife covered the testator's entire estate—"all my property, real, personal and mixed, of what nature or kind soever, and wheresoever the same shall be at the time of my death." But the remainder in fee to his foster daughter, the *feme* plaintiff, is limited to the "said property or as much thereof as may be in her (his wife's) possession at the time of her death." So the precise question is, do the words "as much thereof as may be in her possession at the time of her death" annex as appurtenant to the life estate a power

HERRING *v.* WILLIAMS.

of disposition in the life tenant? If the power of disposition is appurtenant to, or incident to, the life estate, then under the decision of this Court in *Parks v. Robinson,* 138 N. C., 269, the life tenant could convey in fee in the exercise of that power. In that case *Connor, J.,* speaking for this Court, said: "To restrict the power of disposal of her life estate would be to nullify its effect. She had such power incident to her life estate. To confine the power of disposal to such life estate would do violence to the rule of construction that every word used by the testator should be given force." The language of the will, construed in that case, was as follows: "I give, etc., to my beloved wife, Ann Parks, during her natural life and at her disposal, all the rest, residue and remainder of my real and personal estate." There was in that will, differing from the one now being considered, no limitation over. But in the case of *Troy v. Troy,* 60 N. C., 624, a will was presented to this Court with a remainder in fee to the son, limited upon the life estate of the wife, and *Pearson, C. J.,* speaking for the Court, said: "This is a power *appurtenant* to her life estate, and the estate which may be created by its exercise will take effect out of the life estate given to her, as well as out of the remainder. A power of this description is construed more favorably than a naked power given to a stranger, or a power *appendant,* because, as its exercise will be in derogation of the estate of the person to whom it is given, it is less apt to be resorted to injudiciously, than one given to a stranger, or one which does not affect the estate of the person to whom it is given." *Stroud v. Morrow,* 52 N. C., 463; *Burleigh v. Clough,* 52 N. H., 267; *Herring v. Barrow,* L. R., 13 Chan. Div., 144; *Stuart v. Walker,* 72 Me., 145; *Ayer v. Ayer,* 128 Mass., 575; *Fairman v. Beal,* 14 Ill., 244; *Jackson v. Robins,* 16 Johns., 537; *Underwood v. Cove,* 75 N. W. (Mo.), 451; *McCullough's Admr. v. Anderson,* 7 L. R. A. (O. S.) (Ky.), 836; 2 Underhill on Wills, sec. 687.

Do the words of this will confer upon the life tenant a power of disposal of the property devised? Unless such effect is given to them, we must reject as meaningless the words, "or as such thereof as may be in her possession at the time of her death." The contention of the *feme* plaintiff is that the remainder in

fee, vested in her by the will, extends to and embraces all the property of which the testator was seised and possessed at his death and in which he devised a life estate to his wife, except possibly such as *ipso usu consumuntur,* and so completely is the wife deprived of any power of disposition, the plaintiff can maintain an action to recover damages for voluntary waste. As we have said, to accept the contention of the plaintiff would be to strike from the will the words we have quoted. But we understand the rules of construction to require us to give effect to all the words used by the testator, unless they are in themselves meaningless, or so vaguely express a purpose that no definite intention can be inferred, or are plainly inconsistent with an otherwise clearly expressed intention, or are repugnant to some established rule of law. Redf. on Wills, 431-433. It will be noted that the testator does not use the word "dispose" or "sell" or any of their derivatives, but that it is not necessary to use these words or either of them to confer a power of disposal, has been held in numerous cases where the words used imply such power. *Clark v. Middlesworth,* 82 Ind., 240; *Henderson v. Blackburn,* 104 Ind., 227; *Bamforth v. Bamforth,* 123 Mass., 280; *Johnson v. Battelle,* 125 Mass., 453; *Leggett v. Firth,* 132 N. Y., 7; *Silvers v. Canary,* 109 Ind., 267; *Farish v. Wayman,* 91 Va., 430; *Underwood v. Cove* (Ky.), 75 S. W., 451. It is also settled by the weight of authority that when the power of disposal is given for specific purposes, as for support and maintenance of the devisee of the life estate or of such and others, the power is limited to be exercised for the particular purposes declared. *Chase v. Ladd,* 153 Mass., 126; *Monford v. Dieffenbacker,* 54 Wis., 593; *Swarthout v. Ranier,* 143 N. Y., 499; *Stewart v. Walker,* 72 Me., 145; *Henderson v. Blackburn,* 104 Ill., 227; *Griffin v. Griffin,* 141 Ill., 373; *Ward v. Robertson,* 113 Ind., 323; *Jenkins v. Compton,* 123 Ind., 117. In the case of *Clark v. Middlesworth,* 82 Ind., 240, the Court, in construing a will containing the following devise: "I hereby will, etc., all my property, real and personal, to my wife, Mary A. Clark, during her life, and at her death, should anything remain, the same to be divided among my heirs at law," said: "We think it quite clear that the will of A. B. Clark gave to his widow,

Mary A. Clark, a life estate in said lot, and that it also gave her, by the clearest implication, a power to dispose of the same. The words, 'and at her death, should anything remain,' are senseless and without meaning unless the testator intended that the tenant for life might, prior to her death, dispose of the property devised to her for life. The words show that he must have contemplated this at the time, and therefore have intended it." In *Paine v. Barnes,* 100 Mass., 470, a testator gave to his wife all his real and personal estate, "for her support and benefit during her natural life," and after his wife's death "if anything of said estate should remain," he gave it over to third persons, and it was held by the Court: "The Court are of opinion that the language of the devise to the wife can only be construed as giving her an estate for life, with a contingent power of disposition of the remainder only in case of its being needed for her support. The fact that there is a remainder devised over, after the estate for life to her, shows that it could not be intended to give her a fee, and that the purpose for which the estate is given can only, at the most, imply a power of disposal if the exigency should arise. Perhaps, upon the authorities, the use of the phrase, 'if anything should remain,' in connection with the devise of a remainder of real estate after an estate for life, would imply a power to convey, as otherwise there could be no reason for the doubt whether the estate would remain. *Blanchard v. Blanchard,* 1 Allen, 223; *Andrews v. Bank of Cape Ann,* 3 Allen, 313; *Lynde v. Estabrook,* 7 Allen, 68." To the same effect is *Silvers v. Canary,* 109 Ind., 267, in which case the Court held that the words, "what may not be consumed of real and personal estate at my wife's decease," conferred by implication the power or disposal in fee, and that the remainder was limited to so much as remained unconsumed at the death of the tenant for life. In *Leggett v. Firth,* 132 N. Y., 7, the Court said: "But the remainder itself was in turn limited by the words, 'if any,' which show that the testator did not intend that necessarily there would be anything left upon the death of his wife. 'The remainder, if any,' means the same as, 'if there shall be any remainder,' and the gift over is of what may be left. As it all would be left unless there was a right to dispose of it, it follows, by necessary

implication, that he intended his wife should have that power. Otherwise the words, 'if any,' must be rejected as having no meaning whatever. In determining the intention of a testator, to grant to a tenant for life the power to dispose of the property devised or bequeathed, much weight has been given to the words by which the limitation over is confined to what estate remains upon the death of the first taker. Such intention has been held to conclusively appear in case the property devised could only be diminished by a disposition of it by the one to whom the life estate is given. Such declarations are held to be inconsistent with a supposition that the whole property was to remain undiminished in the hands of the first taker." *Bramell v. Cole,* 136 Mo., 201; *Harris v. Knapp,* 38 Pick., 412. Guided by these well-considered and well-reasoned opinions, we are led to the conclusion that the testator, by the words used by him, to-wit: "or as much thereof as may be in her possession at the time of her death," conferred upon his wife—the devisee of the life estate—the power to dispose of any part or all of said property during her life; that such power was not limited to any specific purpose; and that a deed made by her conveyed the fee-simple title unless restrictive words were used in the deed, showing that a less estate was conveyed; and that the *feme* plaintiff was entitled, as the devisee of the remainder in fee, only to such of the real estate as was undisposed of by the wife. As to the status of the land Mrs. Williams received in exchange for the land owned by her husband and devised in the will, we will not now determine, as no question affecting that is presented by this appeal. If she die possessed of that, then its status can be determined, and not before. Having reached this conclusion, there is error in the rulings and judgment of his Honor, and the motion of the defendants for judgment as of nonsuit should have been granted. The judgment rendered will be set aside and a judgment as of nonsuit will be entered.

Error and reversed.