J. C. RAINES, WILL RAINES, THEO. W. RAINES, H. C. GARRETT, AND
E. R. GARRETT v. MARY D. OSBORNE, EXECUTRIX OF MRS. FANNY J.
RICKS, DECEASED.

(Filed 13 December, 1922.)

**1. Wills—Interpretation.**

In interpreting a will to ascertain a testatrix's intention, the court
should place itself as near as may be in her position, and when the lan-
guage she has therein used is ambiguous or doubtful, it should take into
consideration the situation of the testatrix at the time and the relevant
facts and circumstances surrounding her at the time the will was executed,
the first rule of construction being to give effect to the testatrix's intention
as found in the terms of the will and within the limits which the law
prescribes; and the predominant and controlling purpose of the testatrix
must prevail when ascertained from the general provisions of the instru-
ment over particular and apparently inconsistent expressions to which,
unexplained, a technical force may be given.

**2. Same—Devises—Domestic Servants—Employees.**

A bequest in a will "to any servant or any other household employee"
of the testator should be construed as if expressed "to any household
servant or any other household employee," and does not include within
its meaning those who worked upon the testator's farm, occasionally doing
carpenter's work in the home, laying cement in the house, or laying rock
on the premises, making flower boxes, etc., though occasionally, or at rare
instances, they may have performed some slight service that may come
within the letter of the definition though not within its spirit, and the
clear intention of the testatrix.

**3. Wills—Interpretation—Intent—Evidence—Parol Evidence.**

Parol evidence of a testator's declarations of his intent in making a
will, made before or at the time he executed it, is incompetent, the rule
being that the intent as gathered from the written instrument, under the
established rules of interpretation, will prevail.

STACY, J., dissenting; CLARK, C. J., concurring in the dissenting opinion.

APPEAL by plaintiffs from *Bryson, J.,* at September Term, 1922, of
POLK.

*Quinn, Hamrick & Harris for plaintiffs.*
*R. M. Robinson for defendant.*

WALKER, J. This is the appeal of the plaintiffs, J. C. Raines, Will
Raines, Theodore Raines, R. C. Garrett, and E. R. Garrett, or of the
plaintiffs other than H. Ewart Constant, from the judgment against
them in the court below.

In the defendant's appeal we settled the meaning of the two items,
Nos. 11 and 12, in the will of Mrs. Ricks, with reference to what was
meant by the words "To any servant, or any other household employee,"
construing those words as if they read "To any household servant or any
other household employee," and thus considered, it is our opinion that

none of the present appellants has brought himself within the meaning of those items. Mrs. Ricks, at the time of her death and for many years before that event, owned a very large tract of land, known as "Ricks-haven," upon which she resided. There were about one hundred acres of this land in cultivation, where she raised wheat, corn, rye, potatoes, cabbages, and peas. She had a granary and barns, and an orchard from which she gathered and canned a large quantity of fruits.

The appellants lived on and cultivated for themselves separate small farms of the larger tract of land, and there is testimony tending to show that at least one if not more of them occasionally did work of various kinds in and about the house. As an illustration, we extract a clause from the testimony of Joe C. Raines, one of the appellants, as to the sort of work done by him: "I did just anything she wanted done, on the road and farm and buildings, and laid rock and brick and built flower boxes and worked on the yards building up places to sow grass, and I did carpenter work in the house and laid cement floors. There were about 100 acres of land in cultivation, and she raised wheat, corn, rye, potatoes, cabbage, peas, and she had quite an orchard and canned a good deal of fruit, for I helped with the sealing of the cans. I drove her car for her. H. E. Constant worked about the house mostly. My work was here and yonder, no certain place, but the last part of Mrs. Ricks' life most of my work was up about the house." But it was not household work either in the legal or popular sense of those words. He did no such work in or about the house as that performed by H. E. Constant, or as that contemplated or intended by the testatrix when she wrote the items Nos. 11 and 12. They were not in any proper sense household servants or household employees. They were farm laborers, or persons engaged in outside work, although they may occasionally have done work near or even in the house, and even those seem to have been rare instances. Carpenter's work, done in the house, or that of laying cement or laying rock, making flower boxes, and road or farm work, would never be supposed to mean housework, or the persons doing those things upon special request of Mrs. Ricks could never be properly or correctly considered as either household servants or household employees.

In determining the testator's intention, the court should place itself as near as possible in his position, and hence where the language of the will is ambiguous or doubtful, should take into consideration the situation of the testator and the facts and circumstances surrounding him at the time the will was executed. 40 Cyc., p. 1392. This rule has been adopted in North Carolina. *Bunting v. Harris,* 62 N. C., 11; *Freeman v. Freeman,* 141 N. C., 97. There are many other cases that could be cited as adhering to this rule. The first great rule in the

construction of wills is that the intention of the testator must prevail, provided it can be effectuated within the limits which the law prescribes. *Leeper v. Neagle,* 94 N. C., 338. In the construction of a will, the predominant and controlling purpose of the testator must prevail when ascertained from the general provisions of the will over particular and apparently inconsistent expressions to which, unexplained, a technical force is given. *Francks v. Whitaker,* 116 N. C., 518.

Even if we could apply to this case the principle advanced and much relied upon by the appellants, as to the general or primary intention taking precedence of the particular or secondary one, for which they cite 40 Cyc., pp. 1393 and 1399, we would be unable to hold that the appellants were either "household servants or household employees."

The appellants do not answer the description of "household servants or household employees," who are those employed in the mansion house, and which words were certainly not intended to embrace those who worked out of doors upon the home place, and were not even regularly employed to do work within the curtilage.

The clause of the will under which the plaintiff claimed a legacy in *Frazier v. Weld,* 177 Mass., 513; 59 N. E., 118, was as follows: "I give and bequeath to each one of the servants who, at the time of my death, shall have been in my employ at my homestead, or at the stable connected therewith, a period of four consecutive years, the sum of one thousand dollars." In construing this clause, the Court said: "In the present instance we think that this testator used the expression 'at my homestead' in the sense of 'at my dwelling-house.' We think, therefore, that the bequest was intended for only such servants as were employed in the mansion house or the stable, and not for those who worked out of doors upon the home place. It was to domestic servants and to stable hands. We think the bequest is to only such servants as were hired to work in the house or the stable. Whether the plaintiff is a legatee depends upon the general nature of his employment, and he was an out of doors laborer rather than a servant employed at the house or stable. The small proportion of his work done in the house or stable was merely incidental to his main employment, and did not bring him within the class of servants employed at either of these places for the necessary four consecutive years, within the meaning of the first sentence of the clause giving the bequest."

*Murphy v. Lawrence,* 218 Mass., 39; 105 N. E., 380, was a case where the article of the will upon which plaintiff relied for recovery was as follows: "I also give $5,000 to each of my domestic servants, other than those mentioned in the two preceding articles, who shall be in my service at my decease, and who shall have been in such service for the five years immediately preceding my death." Upon this clause the

Court says: "The question is, Was the plaintiff a 'domestic servant' within the meaning of that term as thus used by the testator? The servants employed at this establishment consisted, at least, of Sherman, the coachman, a saddle horseman, and the plaintiff, who, as the trial judge has found, was 'engaged in the employment of the testator as a stableman or groom, whose duties were principally in connection with the care of the horse and at the stable,' and the two female servants in the house, who were sisters, one serving as cook and the other second girl or waitress. These two sisters were the only servants then or thereafter living in the house up to the time of the testator's death. It is manifest that in framing this clause the testator was thinking only of the same general class as the Kelly sisters, that is, persons whose chief or only duty was in the house, and that only such a person was regarded by him as a domestic servant within the meaning of the clause. The duties of the plaintiff, as found by the trial judge, were not of that kind, and upon such findings it follows as a matter of law that the plaintiff's case falls."

We could hardly cite two cases of such high authority and entitled to so much respect where the facts are so nearly identical with those we are now considering, and we fully concur in the construction which the court placed upon those wills, and the principle there applied is controlling in this appeal.

Our decision on the question of evidence is also against the appellants, and is the same as that in Constant's appeal. "The general rule is that parol testimony is not competent to prove a testator's declarations prior to or after the execution of his will to aid in its construction, nor are such declarations admissible even if made at the time of the execution. Since the testator's intention is to be ascertained from his written will, his parol declarations of his understanding of the meaning of his will are not admissible for the purpose of interpreting his testament. It is obvious that if verbal declarations were admitted, wills might be overthrown which expressed the intention of one who could not dispute evidence of his declarations, nor give explanations of them, and thus grave evils would result." 28 Ruling Case Law, p. 280. "It seems to be generally held that the declarations of a testator are not competent upon the question of the interpretation of the contents of his will." *In re Shelton,* 143 N. C., 218; 10 Anno. Cases, 531. In that case the Court also says: "This exception to the general rule prohibiting hearsay, however, does not make competent the testimony of the witness by whom contestant offered to prove statements made by the testator in November, 1904, as to how he was going to leave his property. It is generally agreed that the declarations of the testator may not be received to explain, change, or add to a written will, nor can it be revoked by

parol. 1 Redfield on Wills. We see no view in which said evidence was competent on this trial." See, also, note to Ann. Cas., 1915 B, page 16.

There was no error, therefore, in the opinion and decision of Judge Bryson directing a judgment of nonsuit against the appellants.

No error.

STACY, J., dissenting: The law is correctly stated in the opinion of the Court, but I am unable to agree with its application to the facts in the instant case. In my judgment the plaintiffs are entitled to take under items 11 and 12 of the will of Mrs. Ricks, or, at least, to have the question determined by a jury.

CLARK, C. J., concurs in dissenting opinion.