CHARLES A. CANNON, TRUSTEE, ET AL., v. EUGENE T. CANNON ET AL.

(Filed 28 November, 1945.)

**1. Wills §§ 34, 46: Trusts § 8h—**

Where a trust is created by will and by the terms of the trust the income is payable to a beneficiary for a designated period, the beneficiary is entitled to income from the date of the death of the testator, unless it is otherwise provided in the will.

**2. Wills § 31—**

The intention of a testator is his will. This intention is to be gathered from the general purpose of the will and the significance of the various expressions, enlarged or restricted according to their real intent. In interpreting the different provisions of a will, the courts are not confined to the literal meaning of a single phrase. A thing within the intention is regarded within the will though not within the letter. A thing within the letter is not within the will if not also within the intention.

**3. Same—**

In ascertaining testator's intention, the will in its entirety must be brought into focus, and it is competent to consider the conditions surrounding the testator, how he was circumstanced, his relationship to the objects of his bounty, so as nearly as possible to get his viewpoint at the time the will was executed.

**4. Same—**

Where the intention of the maker of a will is clearly and consistently expressed, there is no occasion for any interpretation. The will is to be given effect according to its obvious intent. Construction belongs only to the domain of ambiguity, or where different impressions are reasonably made on different minds.

**5. Wills §§ 33e, 34—**

Where a testatrix. owning at the time large properties in her own name and also a considerable estate held by a trust company under a revocable trust agreement, executed a codicil to her will leaving her residuary estate, largely of valuable securities, to trustees, who were required to divide the same into five shares of equal value and pay from each share an annuity of 4½ per cent, making up the 4½ per cent from the principal of each share when income should prove insufficient, to each of her five children who should survive her, and, should any child not survive testatrix, the share of such deceased child, and upon the death of any other child such child or children's shares, to be again divided, with similar annuities to the children of the deceased child or children, and providing also that the said percentage is to be 4½ per cent on the principal of each share, computed at the market value thereof on the date of the setting aside of such shares, the testatrix at the same time making a similar dispositive change in the trust agreement referred to above, she clearly intended that each of the first annuities should be paid from and after the date of her death and that the principal amount of each share of the first beneficiaries should be set aside and valued as of the same date.

**6. Wills § 31—**

It is a cardinal principle in the interpretation of wills that the predominant and controlling purpose of the testator must prevail, when ascertained from the general provisions of the will, over particular and apparently inconsistent expressions to which, unexplained, a technical force is given.

**7. Same—**

The object of all construction is to arrive at the intent and purpose as expressed in the writing, looking at the instrument from its four corners, and to effectuate this intent and purpose without excessive regard for minor inaccuracies and inconsistencies. These latter variations are to be reconciled, if reasonably accomplishable within the limits which the law prescribes, otherwise they must yield to the general purpose as expressed in the writing.

**8. Wills § 33d—**

In a suit to construe a will, which committed to trustees the duty to divide the principal of the residuary estate into five equal shares and to value each share, in the absence of an allegation of a refusal to act, abuse of discretion, or bad faith on the part of such trustees, the court is without power to make such division or to value the resulting shares. Equity will instruct the trustees to proceed.

SEAWELL, J., dissenting.

BARNHILL, J., concurs in dissenting opinion.

DEVIN, J., is of opinion that the language of Section G requires computing marketing value of shares at date they are set apart.

APPEALS by plaintiffs and defendants from *Bobbitt, J.,* at August Term, 1944, and *Gwyn, J.,* at April Term, 1945, of CABARRUS.

Civil action by Trustees under the will of Mary Ella Cannon, deceased, for construction of will and for advice in the administration of testamentary trust.

The testatrix died 4 May, 1938. Her will consists of the original and two codicils. It has been duly probated in Cabarrus County. After a number of specific bequests, the residue of the estate is left in trust, with instructions for its management as contained in the second codicil. An alleged ambiguity in these instructions has given rise to the present proceeding.

The testatrix named her son, Charles A. Cannon, her son-in-law, David H. Blair, and the Central Hanover Bank & Trust Company trustees of her residuary estate. On the advice of counsel, the corporate trustee decided not to qualify. The individual trustees duly qualified on 16 September, 1941, and received from themselves as executors the residuary trust estate.

The second codicil to the will was executed and published on 21 May, 1937. On this same day Mrs. Cannon amended a "New York Trust Agreement," under which certain properties were held by a trust company in New York, and so far as the dispositive provisions of the two instruments are concerned, i.e., the New York Trust Agreement and the Will, they are exactly alike and the beneficiaries are the same.

On 14 March, 1939, the trustees under the "New York Trust Agreement" instituted an action in New York to have certain matters judicially determined. It was thought that such determination might be binding here; hence, the plea of res judicata and the first appeal, reported in 223 N. C., 664, 28 S. E. (2d), 240.

The pertinent provisions of the second codicil follow:

"Fifth: All the rest, residue and remainder of my property and estate of whatsoever kind and wheresoever situate, I give, devise and bequeath to my Trustees, hereinafter named, In Trust, Nevertheless, to hold, manage, control, invest and reinvest the same and to divide the principal thereof into five (5) equal shares and to dispose of each such equal share as follows:

"(A) My Trustees shall set apart one (1) such equal share and, in case my son, Eugene T. Cannon, shall survive me, shall pay over to the said Eugene T. Cannon from the said equal share an annuity of four and one-half per centum (4½%) per annum in each and every year during his life. Said annuity shall be paid out of the income of the said share of the trust estate to the extent that the income shall suffice therefor and in case there shall be any deficiency in income in any year said deficiency shall be made up out of the principal. In case in any year there shall be a surplus of income over and above said annuity, such income shall be added to the principal of the said share. It is my inten-

tion that said annuity shall be payable without reference to the existence or absence of income.

"Upon the death of my said son, Eugene T. Cannon, or in case he shall die before me then upon my death, the said equal share shall be divided into four (4) equal parts and each such equal part shall be disposed of as follows:

"(i) My trustees shall set apart one (1) such equal part and shall pay over to William C. Cannon, my grandchild and a son of my son, Charles A. Cannon, from the said equal part an annuity of four and one-half per centum (4½%) per annum in each and every year during the life of said William C. Cannon. Said annuity shall be paid out of the income of the said part of the trust estate to the extent that the income shall suffice therefor. In case there shall be any deficiency in income in any year, said deficiency shall be made up out of the principal. In case in any year there shall be a surplus of income over and above said annuity, such income shall be added to the principal of the said part. It is my intention that said annuity shall be payable without reference to the existence or absence of income."

Similar provisions are made in respect of the remaining four equal shares, to be held in trust, one each for the daughters of the testatrix: (B) Adelaide Cannon Blair; (C) Margaret Cannon Howell; (D) Mary Cannon Lucke; (E) Laura Cannon Mattes. The last named daughter has no children, except adopted children who are excluded by the will. Her interest, therefore, will cease at her death, and the share of which she is the first beneficiary will go to the issue of her brother and sisters.

In all, nineteen individuals are mentioned in this item: five first beneficiaries, children of the testatrix, and fourteen second beneficiaries, grandchildren of the testatrix, who, if they all live, will be entitled to receive an annuity of 4½% of the value of a share or part under the terms of the will.

Then comes paragraph (G) in this item which has resulted in variant contentions:

"(G) Whenever an annuity of four and one-half per centum (4½%) of a share or part of the trust estate is granted under the terms and provisions of this my Will, the said percentage shall be that percentage (*i.e.* 4½%) of the principal of the share or part set aside in trust, computed at the market value thereof at the date of the setting aside of said share or part."

At the August Term, 1944, Bobbitt, J., presiding, it was adjudged:

"1. That the annuities to the first annuitants (children of Mary Ella Cannon) provided for in the fifth item of the second codicil to Mary Ella Cannon's Will accrued, and are payable, as of the death of Mary Ella Cannon, to wit: May 4, 1938.

"2. That, for the purpose of ascertaining the amount of each of said annuities, the market value of the principal of each of the trust shares set apart by the Trustees shall be determined as of the date of the setting apart of said shares by the said Trustees, to wit: September 16, 1941."

For the purpose of ascertaining the market value of each of the first five shares "as of September 16, 1941," over objection of all parties, the matter was referred to Hon. S. J. Ervin, Jr., to find the facts and report the same, together with his conclusions of law, to the court.

The plaintiffs and the defendants, other than Laura Cannon Mattes, noted an exception to this judgment.

As the estate consists largely of corporate stocks, principally stock in the Cannon Mills Company, the Referee applied the "Blockage Rule" in arriving at the market value of the Cannon Mills stock. Under this rule, the stock of the Cannon Mills Company was valued at $335⁄8 per share, whereas it was then actually selling on the market at $361⁄8. The reason given by the Referee and adopted by the court below was that the "prices at which small blocks of stock in the Cannon Mills Company were sold on the New York Stock Exchange on or about September 16, 1941, did not accurately reflect the market values of the large blocks of such stock held by the trust and allocated to the five trust shares on September 16, 1941."

With some slight modifications the referee's report was approved at the April Term, 1945, Gwyn, J., presiding.

Exceptions to this judgment were noted by the plaintiffs and by the following defendants: E. T. Cannon, Adelaide Cannon Blair, Jay B. Douglass, Adelaide Douglass Whitley, David J. Blair, Jr., William C. Cannon, Mariam Cannon Hayes, Charles A. Cannon, Jr., Mary Ruth Cannon, Margaret Cannon Howell, Mary Cannon Hill, Charles G. Hill, Susan Hill Walker, Jane Hill Simpson, Ernest R. Alexander, guardian *ad litem* for the minor defendants, Norma Louise Cannon *et al.,* and J. Carlyle Rutledge, guardian *ad litem* for the unborn issue of Adelaide Cannon Blair *et al.,* and Laura Cannon Mattes.

Several appeals are here prosecuted from both judgments, the plaintiffs and the named defendants duly preserving their respective exceptions and assignments of error.

*W. H. Beckerdite for Charles A. Cannon, Trustee, and Adelaide Cannon Blair, Successor Trustee, appellants-appellees.*

*E. T. Bost, Jr., for E. T. Cannon, William C. Cannon, Mariam Cannon Hayes, Charles A. Cannon, Jr., and Mary Ruth Cannon, appellants-appellees.*

*Ratcliffe, Vaughn, Hudson & Ferrell for Margaret Cannon Howell, Mary Cannon Hill, Charles G. Hill, Susan Hill Walker, and Jane Hill Simpson, appellants-appellees.*

*J. G. Korner, Jr., for Adelaide Cannon Blair, Jay B. Douglass, Adelaide Douglass Whitley, and David H. Blair, Jr., appellants-appellees.*

*E. R. Alexander, Guardian ad litem for the minor defendants, Norma Louise Cannon, et al., appellants-appellees.*

*J. Carlyle Rutledge, Guardian ad litem for the unborn issue of Adelaide Cannon Blair, et al., appellants-appellees.*

*John M. Robinson and Hunter M. Jones for Laura Cannon Mattes, appellant, appellee.*

STACY, C. J. This is the same case that was before us at the Fall Term, 1943, on demurrers to pleas of estoppel or *res judicata,* reported in 223 N. C., 664, 28 S. E. (2d), 240, to which reference may be had for further statement of the facts.

The will is now presented for construction in a number of particulars.

## I. THE JUDGMENT AT AUGUST TERM, 1944.

Two questions were specifically decided at the August Term, 1944, Cabarrus Superior Court: first, that the annuities to the first annuitants vested or accrued at the date of the death of the testatrix, and became payable from and after that date; and, second, that the market value of the principal of each of the first trust shares is to be determined as of the date of its setting aside by the Trustees, to wit, 16 September, 1941.

It is conceded on all sides that the trial court correctly decided the accrual date of the first annuities to be the date of the death of the testatrix, and that they became payable from and after that date. Indeed, such accords with the general current of authority on the subject. Anno. 70 A. L. R., 636. The following appears in the Restatement of the Law of Trusts, page 692:

"Where a trust is created by will and by the terms of the trust the income is payable to a beneficiary for a designated period, the beneficiary is entitled to income from the date of the death of the testator, unless it is otherwise provided in the will. The rule here stated is applicable to trusts created by a specific devise or legacy, by a general pecuniary legacy, and by a residuary devise or bequest; and it is immaterial whether the same person is designated as executor and trustee."

The case of *Trust Co. v. Jones,* 210 N. C., 339, 186 S. E., 335, is in support of this statement. The accrual date of the first annuities, then, may be taken as "fixed and determined" so far as the present action is concerned. See *Kinney v. Uglow,* 163 Ore., 539, 98 P. (2d), 1006.

In respect of the correctness of the second question decided at the August Term, 1944, *i.e.,* that the market value of the principal of each of the first trust shares should be determined as of 16 September, 1941, the parties are in sharp disagreement. It is therefore brought up for review. The answer involves the construction of several provisions of the will.

It is to the financial interest of the children of four of the first annuitants to have the market value of the principal of their trust shares determined at the accrual date, to wit, the date of the death of the testatrix. The children of Laura Cannon Mattes, however, being adopted children, are excluded by the will, and it is to her pecuniary interest to have the market value of the principal of her trust share determined as of 16 September, 1941. It is agreed that the market value of the principal of the first trust shares should be determined at one or the other of these dates.

The solution of the problem is to be found in the expressed purpose of the testatrix. The intention of the testatrix is her will. This intention is to be gathered from the general purpose of the will and the significance of the various expressions, enlarged or restricted according to their real intent. In interpreting the different provisions of a will, the courts are not confined to the literal meaning of a single phrase. A thing within the intention is regarded within the will though not within the letter. A thing within the letter is not within the will if not also within the intention. *Bank v. Corl, ante,* 96; *Trust Co. v. Miller,* 223 N. C., 1, 25 S. E. (2d), 177; *Williams v. Rand,* 223 N. C., 734, 28 S. E. (2d), 247. In ascertaining such intention, the will in its entirety must be brought into focus, and it is competent to consider the conditions surrounding the testatrix, how she was circumstanced, her relationship to the objects of her bounty, so as nearly as possible to get her viewpoint at the time the will was executed. *HeHyer v. Bulluck,* 210 N. C., 321, 186 S. E., 356; *Herring v. Williams,* 153 N. C., 231, 69 S. E., 140.

It follows, of course, that where the intention of the maker of the will is clearly and consistently expressed, there is no occasion for any interpretation. *McCallum v. McCallum,* 167 N. C., 310, 83 S. E., 250. The will is to be given effect according to its obvious intent. *Brock v. Porter,* 220 N. C., 28, 16 S. E. (2d), 410. Construction belongs only to the domain of ambiguity, or where different impressions are reasonably made on different minds. *Walton v. Melton,* 184 Va., 111, 34 S. E. (2d), 129. The writing would not be doubtful if it had the same meaning to everyone. *Krites v. Plott,* 222 N. C., 679, 24 S. E. (2d), 531.

It is the function of construction to ascertain the will of the testatrix. This accomplished, then follows the mandate: "Thy will be done." *McCallum v. McCallum, supra.*

At the time of the execution of the second codicil, the testatrix had large properties in her own name, and she also had a considerable estate held by a trust company in New York under a revocable trust agreement. She amended this trust agreement and executed the second codicil to her will at the same time, making similar dispositive changes in both. The New York court held that under the amendment to this trust agreement the first trust shares vested, both in interest and in title, at the date of the death of the donor and that the principal amount of each of the respective shares should be valued as of that date, 4 May, 1938. See *Cannon v. Cannon, supra.*

The controlling provisions in the Fifth Item of the second codicil are these:

"All the rest . . . of my property . . . I give . . . to my Trustees . . . in trust . . . to hold, manage, control, invest and reinvest the same and to divide the principal thereof into five equal shares and to dispose of each such equal share as follows:

"(A) My Trustees shall set apart one (1) such equal share and, in case my son Eugene T. Cannon shall survive me, shall pay over . . . from the said equal share, an annuity of four and one-half per centum, etc.

"Upon the death of my said son, Eugene T. Cannon, or in case he shall die before me then upon my death, the said equal share shall be divided into four (4) equal parts," etc.

Exactly similar expressions are repeated in clauses "(B)," "(C)" and "(D)," the only differences being in the names of the beneficiaries and the number of second divisions.

Then comes the instruction in paragraph "(G)," to the effect that "whenever" an annuity of four and one-half per centum of a share or part of the trust estate "is granted" under the terms of the will, the said percentage shall be that percentage of the principal of the share or part "set aside in trust, computed at the market value thereof at the date of the setting aside of said share or part."

It will be noted that the time at which the testatrix "granted" the annuities to each of the first five annuitants was at the date of her death. She says in respect of each of these that in case he or she "shall survive me," my trustees shall pay over to him or her "from the said equal share" an annuity for life of four and one-half *per centum*. Hence it was contemplated that the principal of the share should be "set aside in trust" upon the vesting in right of the annuity, for it is provided that the "said annuity shall be paid," not out of the general residuary estate, but "out of the income of the said share of the trust estate to the extent that the income shall suffice therefor, and in case there shall be any deficiency in

income in any year, said deficiency shall be made up out of the principal."

Similar provisions are made in respect of the second beneficiaries. The testatrix says that "upon the death" of my said son or daughter as the case may be, or in case he or she shall die before me, "then upon my death," the said equal share shall be divided into equal parts, and a lifetime annuity is given to each of her named second beneficiaries, to be paid, not out of the general residuary estate, but "out of the income of the said part of the trust estate to the extent that the income shall suffice therefor. In case there shall be any deficiency in income in any year, said deficiency shall be made up out of the principal."

It is a cardinal principle in the interpretation of wills, that "the predominant and controlling purpose of the testator must prevail, when ascertained from the general provisions of the will, over particular and apparently inconsistent expressions to which, unexplained, a technical force is given." *Raines v. Osborne,* 184 N. C., 599, 114 S. E., 849. The central consideration is the general purpose of the will. *Holland v. Smith,* 224 N. C., 255, 29 S. E. (2d), 888. The object of all construction is to arrive at the intent and purpose as expressed in the writing, looking at the instrument from its four corners, and to effectuate this intent and purpose without excessive regard for minor inaccuracies or inconsistencies. *Krites v. Plott, supra.* These latter variations are to be reconciled, if reasonably accomplishable within the limits which the law prescribes, otherwise they must yield to the general purpose as expressed in the writing. *Carroll v. Herring,* 180 N. C., 369, 104 S. E., 892.

If we look at the second codicil from the viewpoint of the testatrix at the time of its execution, as we are enjoined to do, the above construction harmonizes all of its provisions, and leaves no possible clashes or contradictions which might thereafter arise. Such a result is supposed to have been in the mind of the testatrix when the codicil was published. Her dominant purpose, as repeatedly expressed in the will, also lends support to the construction. *Raines v. Osborne, supra.* We think the testatrix intended that the first annuities granted under the provisions of her will should vest in right as of the date of her death, and that the principal of each first equal share should be "set aside in trust" and valued as of the same date.

In support of the 16 September, 1941, date for the determination of the first trust shares, it is suggested that the division is to be made by the Trustees in their capacity as such, and that this could not be done prior to the time the residuary estate came into their hands. To meet this position, it is pointed out that the Trustees were also instructed to pay an annuity of four and one-half *per centum* to each of the first five

annuitants, "from the said equal share," paying it first out of the income from said share, and in case of any deficiency in income, then out of the principal of the share, it being the intention of the testatrix that the annuity should be paid "without reference to the existence or absence of income" arising from the individual share. The testatrix clearly intended that each of these annuities should be paid from and after the date of her death, as the only condition annexed thereto was that the annuitant "shall survive me." By the same token that the Trustees were instructed to make payments beginning with a date prior to the time the residuary estate came into their hands, they were likewise directed to compute the value of the trust shares as of the same date, *i.e.,* when the shares were to be "set aside in trust" under the terms of the will and the annuities paid therefrom, which, as stated above, was the date of the death of the testatrix. The dominant purpose of the will and the rule of harmonization are in conformity with this conclusion. *Allen v. Cameron,* 181 N. C., 120, 106 S. E., 484; *Ralston v. Telfair,* 17 N. C., 255.

II.   THE VALUATION OF THE TRUST SHARES BY THE COURT:

Prior to the order of reference, for ascertainment of the value of the first trust shares, two of the initial beneficiaries, Margaret Cannon Howell and Adelaide Cannon Blair, and their children who are second beneficiaries, demurred to the pleadings in the cause on the ground that no facts are stated therein which would authorize the court to fix the value of the trust shares for the purpose of computing the annuities payable to the first beneficiaries. The demurrers were overruled, and exceptions were duly entered.

It is the contention of the demurrants that the division of the principal of the residuary estate into five equal shares, as well as the valuation of such shares, is committed in the first instance to the Trustees, and that in the absence of an allegation of a refusal to act, abuse of discretion, or bad faith, the court is without authority in the premises. This position would seem to be sound. *Carter v. Young,* 193 N. C., 678, 137 S. E., 875. It is true the Trustees have asked the court to fix the value of the trust shares, as well as the time for their valuation, and some of the beneficiaries have joined in this request. But the testatrix has reposed this confidence in her Trustees. She knew their respective interests in the matter and deliberately selected them for the purpose. Equity will instruct the Trustees how to proceed, but there is no occasion for the court to administer the trust. *Finley v. Finley,* 201 N. C., 1, 158 S. E., 549; *Reid v. Alexander,* 170 N. C., 303, 87 S. E., 125. The demurrers were well interposed.

III.  THE JUDGMENT AT THE APRIL TERM, 1945 :

The disposition heretofore made of the exceptions addressed to the judgment entered at the August Term, 1944, renders it unnecessary to consider the exceptions addressed to the judgment entered at the April Term, 1945, further than to say this judgment will be vacated, the referee's report stricken out, and the cause remanded for further proceedings and directions to the Trustees as may be appropriate in the light of the determinations here made.

Error and remanded.

SEAWELL, J., dissenting: First, as to the form of the main opinion. I do not see that there is any appeal before us from the judgment rendered by Bobbitt, J., at August Term, 1944, or that, as a matter of law, there could be. At that term an unappealable interlocutory order referring the finding of the market value of the shares under the judgment of the court was made by Judge Bobbitt, to which the parties made exception, thus preserving the right of review upon the determination of the cause. This review is properly had under the appeal from Judge Gwyn now under consideration, and not upon any appeal from any judgment of Judge Bobbitt. The exceptions made do not preserve the right of review in so far as that judgment as appealable, and in this respect no appeal was made. See pp. 70 to 73 of the record, and the entries on p. 73.

I disagree with the majority opinion in its holding that the securities or other property upon which the annuities set up in Mrs. Cannon's will are to be computed should be valued as of the date of her death. I may assign three reasons for my dissent: First, because Mrs. Cannon, in plain and direct language (paragraph G), says that they are to be appraised at the market value obtainable at the time of their setting apart by the trustees, which setting apart could not take place and was not expected to take place until the termination of the prior administration in which the title to the property, as well as its possession, was in the hands of the executors; and second, because the attempted rationalization by which the will is held to mean otherwise is uninvited by any ambiguity or contradiction in its terms and is inconsistent with facts and conditions known to Mrs. Cannon, and in contemplation of which she is presumed to have acted; and third, because it is physically impossible to apply the rule adopted by the Court to all of the annuities set up under the will; and uniformity in that regard is an essential test of the rule.

I think we may concede without citation of supporting cases, of which there must be many thousands, that the purpose of construing a will (where construction is necessary) is to find the intent of the testator.

We are perfectly agreed that this must be found from the whole will—from its "four corners." The cliches and formulas by which this never-doubted principle is expressed are so numerous and so frequently cited that no lawyer now grasps a will by its four corners without facing north.

But these general expressions are only peripherically concerned, if at all, with the point at issue here. After conceding them to be impeccable, we inquire: What from then on?

1. We come to what Mrs. Cannon really said about the market value which she chose to be set upon the shares on which the annuities are to be computed. Clause G:

"Whenever an annuity of four and one-half per centum ($4\frac{1}{2}\%$) of a share or part of the trust estate is granted under the terms and provisions of this my Will, the said percentage shall be that percentage (*i.e.*, $4\frac{1}{2}\%$) of the principal of the share or part set aside in trust, computed at the market value thereof at the date of the setting aside of said share or part."

And not "as of" any other date that would either raise or lower the level of income she chose to provide for the objects of her bounty. And this is all that she said anywhere in the will about the date of the market value to be followed in fixing the value of the shares.

Also, there is no other specific provision of the will, and I think no general intent within its four corners, that contradicts or casts any doubt upon this clearly expressed intention. Against this expression of intent, the Court should not be astute to find conjectural ambiguities or a speculation or merely any plausible intent against an express declaration to the contrary. *Freeman v. Freeman,* 141 N. C., 97, 53 S. E., 620; *Faison v. Middleton,* 171 N. C., 170, 88 S. E., 141; *Baker v. Edge,* 174 N. C., 100, 93 S. E., 462; *Dicks v. Young,* 181 N. C., 448, 107 S. E., 220.

The "setting aside" was not the act of the law nor by virtue of any self-executing or automatic provision of the will. It must occur, if at all, by the intelligent agency set up under the will—the trustees appointed under it. Mrs. Cannon knew that these trustees could not perform that duty and were not expected to do so until the prior administration had ended and the quantity and character of the property upon which the annuities are computed were ascertained and the property turned over to the trustees. By the same reasoning, no computation of any sort could be made until that time—a period which under the law was supposed to extend for two years at least, unless under special circumstances, and which actually lasted nearly three years. This was an active administration in which not only the possession, but the title of the property was in the hands of the executors, and out of it had to be paid debts, taxes, and costs of administration, as well as special legacies and bequests, before it could be ascertained what property, either in kind or amount,

was left to be delivered to the trustees and by them set up into shares for the annuitants.

2. The theory of valuation as of the date of testatrix' death advanced in the main opinion is variously based on the following arguments: That it is conceded by the parties and found in the judgment that the accrual of the annuities took place at the death of the testatrix, and valuation as of that date must necessarily follow; that the language used in the will is identical to that used in the New York Trust, which figured in the case upon our former appeal, and the judgment of the New York Court and the language employed in the New York Trust afford some argument in favor of the position taken in the main opinion; that the proper construction of paragraph "G" carries us back to the date of death of the testatrix for valuation of the shares.

My views regarding the New York case and the trust involved in that suit are fully stated in *Cannon v. Cannon,* 223 N. C., 664, 28 S. E. (2d), 240—the former appeal—and I must be content with what is said there. I need only say now that the circumstances surrounding the donor there and the testatrix here are so radically different as to make any worthwhile comparison impossible.

There is no important significance to be attached to the fact that the accrual of the annuities occurs at the death of the testatrix. Whether that be a matter of common consent amongst the parties or derived from application of correct principles of law makes no difference. There is no necessity in fact and no compulsion of law that the valuation of the shares should be as of that date. Mrs. Cannon knew that the setting apart of the shares which she had in mind could not take place at that time, but must take place, if at all, after the property was turned over to the trustees. She thought that an appropriate time at which to fix the current market value, and her choice was reasonable. At any rate, the property was hers, and her right to fix such a time cannot be questioned. She had as much right to see that the shares were enhanced by adding the *ad interim* increment of value in favor of the first objects of her bounty as she had to add to the principal of each share the surplus earning over the 4½% in behalf of later annuitants. The suggestion of a general fund set up at death out of which the annuities were created and paid is contrary to the will. Taking the first annuitants as typical, these annuitants each did not have an undivided one-fifth interest in the income of a general trust fund provided for their benefit on death. There was no such fund. The annuity was paid out of earnings of a specific share allotted to each, presumably in kind, to be supplemented when necessary from the principal of that share to keep up the annuity income level.

The companion theory that the law effects a division or constructively regards a division as taking place upon the death of the testatrix is

CANNON *v.* CANNON.

purely conceptional, inadequate to administrative necessities, and not likely to have any bearing on the intent of the testatrix, who wished to have her property handled by intelligent agents and purposed to give them specific directives in its management. The "setting apart" contemplated in the will was an actual division into shares, requiring the exercise of business judgment. I do not understand it to be denied by any party that such a division did not and could not take place until the property was in the hands of the trustees. I think it is enough for us to know that the testatrix had in mind an actual division into shares and a "setting apart" by the trustees, and of her own will and purpose required the market price current at that time to be applied in valuing them.

3. The annuity scheme set up in the will is proliferating, extending to grandchildren who contingently take by subdivision of the shares of ancestors or other annuitants; and in terms paragraph "G" applies to this situation also. The process of succession may take many years to run its course before this subdivision takes place. By that time the respective shares may have greatly diminished in value by consumption of the principal in supplementing the first annuitant's income, or vastly increased by addition of the surplus earning above the four and one-half per cent. Changes either way may have occurred through exercise of the power of investment and reinvestment given the trustees under the will, and in that way the form, nature, character of the component property changes, with complete destruction of identity. The rule adopted by the majority—freezing the application of market values "as of" the date of testatrix' death—will then have no significance. Upon the test of its universality, the rule fails—and yet paragraph "G" purports to set up a rule, and the only rule, applicable to all the annuities set up in the will, wherever *any* annuity is granted under its terms. Frankly, Mrs. Cannon's outlook seems to be broader in its horizon than that we are about to take.

In this will Mrs. Cannon showed every intention to meet the circumstances surrounding her at the time the will was made, and in so doing to fix a level of income for her children, the first annuitants and first objects of her bounty, which she thought reasonable. In doing so, she made necessary the application of a current market value for the properties constituting the respective shares, which happens to be higher than that contended for by certain of the appellants. That level ought to stand. The same rule should apply had it been lower.

I concur in so much of the opinion that holds that the actual determination of the market value on 16 September, 1941, could not be made by the Court or its referee. The testatrix reposed that duty in men of large experience and unquestioned probity, and the power is nondelegable.

I also concur in the holding that the blockage rule should not be applied in valuing the securities composing the trust. The will does not require their sale in any such way, and it would be avoided by prudent business men.

With the modifications here suggested, the judgment should be affirmed.

BARNHILL, J., concurs in this dissent.

DEVIN, J., is of opinion that the language of Section G requires computing market value of shares at date they are set apart.